### HARRY HYATT *v.* CITY OF MILFORD
### (9923)

DALY, LAVERY and LANDAU, Js.

Argued September 23—decision released December 3, 1991

*Michael C. Sohon,* for the appellant (plaintiff).

*Marilyn J. Lipton,* city attorney, for the appellee (defendant).

LAVERY, J. The plaintiff, a retired city of Milford firefighter, appeals from a judgment rendered for the

defendant after the trial court granted the defendant's motion to dismiss. The issue presented is whether the plaintiff failed to exhaust his administrative remedies by bringing an action under General Statutes § 31-300[1] instead of bringing his heart and hypertension claim before the workers' compensation commissioner. We affirm the judgment of the trial court.

The undisputed facts are as follows. In January, 1983, the plaintiff, then a Milford firefighter, discovered that he suffered from heart disease. He subsequently brought a claim under the heart disease and hypertension statute for policemen and firemen; General Statutes § 7-433c;[2] before the workers' compensation

[1] General Statutes § 31-300 provides in pertinent part: "As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of his award. The commissioner shall, as part of the written award, inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original award in his office. If no appeal from his decision is taken by either party within ten days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the superior court."

[2] General Statutes § 7-433c provides in pertinent part: "BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTEN-SION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension . . . municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568

commission. The plaintiff retired from the defendant's fire department in January, 1984. In January, 1985, the workers' compensation commissioner awarded the plaintiff benefits under § 7-433c. The commissioner found that the defendant had a 25 percent permanent partial impairment which entitled him to 195 weeks of compensation at a maximum rate of $326 per week, subject to the limitations of General Statutes § 7-433b (b).[3] For 195 weeks, the defendant paid the plaintiff the difference between the plaintiff's pension amount and an amount equal to 100 percent of the weekly compensation paid to members of the defendant's fire department in the same position that the plaintiff held at the time of his retirement. The differ-

if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . . The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467.''

[3] General Statutes § 7-433b (b) provides: ''Notwithstanding the provisions of any general statute, charter or special act to the contrary affecting the noncontributory or contributory retirement systems of any municipality of the state, or any special act providing for a police or firemen benefit fund or other retirement system, the cumulative payments, not including payments for medical care, for compensation and retirement or survivors benefits under section 7-433c shall be adjusted so that the total of such cumulative payments received by such member or his dependents or survivors shall not exceed one hundred per cent of the weekly compensation being paid, during their compensable period, to members of such department in the same position which was held by such member at the time of his death or retirement. Nothing contained herein shall prevent any town, city or borough from paying money from its general fund to any such member or his dependents or survivors, provided the total as such cumulative payments shall not exceed said one hundred per cent of the weekly compensation.''

ence came to $24.88 per week, or a total of $4851.60 for a period of 195 weeks. The 195 week period expired on October 21, 1987.

In October, 1990, the plaintiff filed this action. The plaintiff claims that by paying the plaintiff $4851 out of a total award of $63,570 (195 weeks times $326 per week) the defendant has deprived him of $58,714.40. The defendant filed a motion to dismiss claiming that the plaintiff failed to exhaust his administrative remedies before the workers' compensation commissioner who has primary jurisdiction over heart and hypertension claims under § 7-433c, citing *Grover* v. *Manchester*, 165 Conn. 615, 353 A.2d 719 (1973). The plaintiff appeals from the granting of the motion to dismiss.

"It is a well settled principle of administrative law that a party may not bring a matter to the Superior Court without first exhausting available administrative remedies. *Silverman* v. *New Haven*, 19 Conn. App. 360, 364, 562 A.2d 562, cert. denied, 212 Conn. 812, 565 A.2d 537 (1989)." *Lopiano* v. *Stamford*, 22 Conn. App. 591, 594–95, 577 A.2d 1135 (1990). Indeed, the failure to exhaust applicable administrative remedies deprives the court of subject matter jurisdiction. *Trigila* v. *Hartford*, 217 Conn. 490, 493–94, 586 A.2d 605 (1991). We conclude that because the plaintiff failed to exhaust his administrative remedies pursuant to chapter 568[4] as required by § 7-433c, the motion to dismiss was properly granted.

The plaintiff's claim is that he received a specific award of $63,570 and that he is entitled, under General Statutes § 31-300, to bring an action in Superior Court to enforce that award. The plaintiff's claim relies principally upon *McIntyre* v. *Standard Oil Co. of New York, Inc.*, 126 Conn. 491, 12 A.2d 544 (1940). In *McIn-*

---

[4] Workers' Compensation Act, General Statutes § 31-275 et seq.

*tyre,* the voluntary agreement stated that the $6800 specific award was to be considered as an advanced commuted payment of compensation in a single lump sum. Id., 496. The court went on to say that "[a]n obvious purpose of commutation into a single lump sum is to effect an immediate determination of the rights of the employee and the liability of the employer as to the entire compensation by fixing the amount to be paid and accepted, with a single payment thereof instead of the usual weekly instalments or other periodical payments extending over the compensation period, due allowance, as by discount, being made for the advantages accruing thereby to the employee. When, as here, the award is so commuted and made presently payable, it thereupon becomes a final judgment. . . . As such it is enforceable as provided in § 5251 of the General Statutes, at least in the absence of motion to reopen it." (Citation omitted.) Id.

The plaintiff here, unlike that in *McIntyre,* received neither a commuted and currently payable nor a lump sum award pursuant to General Statutes § 31-302,[5] but rather received an award of $326 for 195 weeks. In *Grover* v. *Manchester,* supra, our Supreme Court made it clear that the only procedural avenue for bringing claims under § 7-433c is chapter 568, which outlines the procedure to be followed by a claimant for workers' compensation before recourse to the courts is available.

[5] General Statutes § 31-302 provides in pertinent part: "Compensations payable under this chapter shall be paid at such particular times in the week and in such manner as the commissioner may order, and shall be paid directly to the persons entitled to receive them unless the commissioner, for good reason, orders payment to those entitled to act for such persons; but when he finds it just or necessary, the commissioner may approve or direct the commutation, in whole or in part, of weekly compensations under the provisions of this chapter into monthly or quarterly payments, or into a single lump sum, which may be paid to the one then entitled to the compensation, and such commutation shall be binding upon all persons entitled to compensation for the injury in question."

The plaintiff's claim in the present case can only be construed as an attempt either to modify his award into a lump sum payment or to interpret the payment method due under his award. The modification or interpretation of an award made by the workers' compensation commissioner is the function of the workers' compensation commission and not the Superior Court. General Statutes § 31-315; *Welch* v. *Arthur A. Fogarty, Inc.,* 157 Conn. 538, 547, 255 A.2d 627 (1969); *Forkas* v. *International Silver Co.,* 100 Conn. 417, 420, 123 A. 831 (1924).

While the Workers' Compensation Act and § 7-433c are separate pieces of legislation, "[t]he procedure for determining recovery under General Statutes § 7-433c is the same as that outlined in chapter 568 . . . ." *Bakelaar* v. *West Haven,* 193 Conn. 59, 68, 475 A.2d 283 (1984). This is presumably because "the legislature saw fit to limit the 'procedural avenue' for bringing claims under section 7-433c to that already existing under chapter 568 rather than require the duplication of administrative machinery available under the work[ers'] compensation act and further burden the courts and the municipalities with additional litigation from claims by firemen and policemen pursuant to this legislation." *Plainville* v. *Travelers Indemnity Co.,* 178 Conn. 664, 671–72, 425 A.2d 131 (1979); *Collins* v. *West Haven,* 210 Conn. 423, 429–30, 555 A.2d 981 (1989); see *Grover* v. *Manchester,* supra, 617–18.

The crux of this case is the proper calculation of § 7-433c benefits and whether or how pension payments may reduce such benefits under § 7-433b. The administration and interpretation of § 7-433c benefits is a primary function of the workers' compensation commissioner and the compensation review division. Those tribunals have developed a proficiency with §§ 7-433c and 7-433b, and have promulgated a body of law dealing with the interpretation of those statutory provisions. This is

underscored by the fact that an appeal from the compensation review division is taken not to the Superior Court but to the Appellate Court. General Statutes § 31-301b; Practice Book § 2014 et seq.

The doctrine of exhaustion of administrative remedies is "designed to prevent piecemeal appeals of a litigant's claims before an administrative agency." *Connecticut Natural Gas Corporation* v. *DPUC,* 1 Conn. App. 1, 3, 467 A.2d 679 (1983); *Connecticut Bank & Trust Co.* v. *CHRO,* 202 Conn. 150, 155, 520 A.2d 186 (1987). This case should proceed through the workers' compensation system.

The judgment is affirmed.

In this opinion the other judges concurred.