[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
The defendants have moved to dismiss all Counts of the Complaint on the grounds that the plaintiff has failed to exhaust her administrative remedies and the court is without jurisdiction to hear this case. CT Page 389
Factual Background
The Second Revised Complaint dated March 22, 1995 contains the following allegations:
 The plaintiff, Maureen Phelan, has been employed as a teacher in the Bloomfield School System from September 8, 1970 to the present. During the academic year 1990-1991 Phelan was assigned to Bloomfield High School as a Social Studies teacher. In August of 1990 the Board promulgated a revised teacher evaluation system. Under that system, Phelan, as a tenured teacher, was subject to a three year evaluation cycle.
 The defendant, Frances Pass, the Social Studies Coordinator for the Bloomfield School system, participated in the evaluation of the plaintiff during the 1990-1991 school year with the knowledge and concurrence of the defendants Bloomfield Board of Education ("Board"), Paul Copes, Superintendent of Schools, and Belinda Carberry, principal of Bloomfield High School. The actions of Pass with respect to the evaluation process were motivated by bias and animosity toward Phelan, Pass lacked the academic and professional credentials to participate in the process and played an inappropriate role in the process. Several days after Pass accused Phelan of insubordination, Phelan was given an evaluation report which was done by Carberry and Pass. The evaluation report and accompanying statements were false and malicious. As a result of that evaluation Phelan was place on "intensive assistance" for the 1991-1992 academic year. After May 31, 1991, the date of the evaluation report, Pass continued to make false and malicious statements relating to Phelan and the evaluation report. The plaintiff's status as the only Bloomfield High School teacher on intensive probation and the false and malicious statements made about her are known throughout the school system and specifically among administrators, teachers, students and members of the community at large. The plaintiff has suffered significant physical and emotional stress arising from the actions of the defendants.
The plaintiff filed a grievance against the Board disputing her placement on intensive probation and requesting that the evaluation and false statements be removed from her file. On CT Page 390 March 26, 1992 the arbitrator found that the plaintiff's grievance was not arbitrable. The issues submitted to the arbitrator were:
 [1] Are teacher evaluations arbitrable under the terms of the collective bargaining agreement? [2] If so, did the Board violate the collective bargaining agreement when it place Maureen Phelan on `Intensive Assistance' under the `Teacher Evaluation System' and [3] If so, what shall be the remedy.
The arbitrator determined teacher evaluations were not arbitrable under the terms of the collective bargaining agreement because that agreement did not make any express reference to the arbitration of evaluations. The arbitrator stated:
 Dozens of published arbitration cases illustrate that, when school boards and teacher organizations agree to make evaluations subject to the grievance and arbitration process, they do so expressly, and they expressly set forth the applicable standard of arbitral review. The issue is so obvious and important that parties would not leave it to chance and uncertainty.
 Here the contract provides for arbitration of specified measure of discipline — reprimand, suspension without pay and withholding increments. It does not provide for arbitration of evaluations. It provides, on the contrary, that teachers `shall have the opportunity to review and discuss evaluation reports with their supervisors.' it is hard to escape the conclusion, therefore, that the parties simply did not intend to make evaluations arbitrable.
The plaintiff's Second Revised Complaint of March 22, 1995 contains six counts alleging the following causes of action:
(a) libel:
(b) slander;
(c) false light;
(d) intentional infliction of emotional distress;
 (e) violations of the due process clause of the United States and the Connecticut Constitutions, and 42 U.S.C. § 1983. CT Page 391
(f) intentional infliction of emotional distress.
Discussion of Law and Ruling
 A party may not institute an action in the Superior Court without first exhausting available administrative remedies. Hyatt v. Milford, 26 Conn. App. 194, 197, 600 A.2d 5 (1991), appeal dismissed, 224 Conn. 441, 619 A.2d 450 (1993); Lopiano v. Stamford, 22 Conn. App. 591, 594-95, 577 A.2d 1135 (1990). If the applicable administrative remedies are not exhausted, the trial court does not have subject matter jurisdiction over the matter. Trigila v. Hartford, 217 Conn. 490, 493-94, 586 A.2d 605 (1991); Hyatt v. Milford, supra. The doctrine of exhaustion discourages piecemeal appeals from the decisions of administrative agencies thus "fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Concerned Citizens of Sterling v. Sterling, 204 Conn. 551. 557, 529 A.2d 666 (1987). Thus, the plaintiff was obliged to invoke the grievance procedures set forth in the collective bargaining agreement. His failure to do so deprived the trial court of subject matter jurisdiction over the appeal.
Gemmell v. New Haven, 32 Conn. App. 280, 283, 628 A.2d 1331 (1993).
 The purpose of the exhaustion requirement is to encourage the use of grievance procedures, rather than the courts, for settling disputes. "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. . . . [I]t would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." (Internal quotation marks omitted.) School Administrators Assn. v. Dow, supra, 200 Conn. 382: see Republic Steel Corp. v. Maddox, supra, 379 U.S. 650: see also Tedesco v. Stamford, 222 Conn. 233, 250-52. 610 A.2d 574 (1992); Harwinton Drilling Engineering Co. v. Public Utilities Control Authority, 188 Conn. 90, 93, 448 A.2d 210 (1982).
CT Page 392
Labbe v. Pension Commission, 229 Conn. 801, 811, 812, 643 A.2d 1268 (1994).
The parties here do not disagree that the foregoing sets forth the law of this state with respect to the exhaustion of administrative remedies. Rather, they disagree as to whether or not the plaintiff has exhausted her administrative remedies.
The undersigned finds that all of the plaintiffs claims are inextricably intertwined with the validity of her evaluation. The arbitrator could not have determined whether, for; example, statements made about the evaluation or contained in the evaluation were defamatory without reviewing the evaluation. However, he could not review the evaluation because he determined that evaluations were not arbitrable. Therefore, the plaintiff has exhausted her administrative remedies. If the court granted the Motion to Dismiss, the plaintiff would be left without any remedy. The Motion to Dismiss is denied.
Aurigemma, J.