SECOND INJURY FUND OF THE STATE TREASURER
*v.* VINCENT LUPACHINO
(AC 15781)

Landau, Spear and Healey, Js.

Argued January 28—officially released June 3, 1997

*James P. Brennan,* for the appellant (defendant).

*Michael J. Giammatteo,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (plaintiff).

*Opinion*

HEALEY, J. This is an appeal from an order granting a prejudgment remedy to the plaintiff second injury fund of the treasurer of the state of Connecticut (fund) against the defendant, Vincent Lupachino, in a matter involving the Worker's Compensation Act (act), General Statutes § 31-275 et seq.

On October 10, 1988, the defendant sustained a work related injury to his back, which was found compensable pursuant to the act. Since that date, he has been receiving temporary total disability benefits pursuant to General Statutes § 31-307. The fund accepted liability for the defendant's workers' compensation benefits on May 8, 1992, pursuant to General Statutes § 31-349 and has paid benefits since that date. On or about May 25,

1995, the fund filed two forms pursuant to General Statutes § 31-296[1] giving notice that it intended to discontinue or reduce the defendant's benefits. The basis for this filing was that he (1) was no longer totally

[1] General Statutes § 31-296 provides in relevant part: "Voluntary agreements. If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. The commissioner's statement of approval shall also inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original agreement, with his approval thereof, in his office and, if an application is made to the superior court for an execution, he shall, upon the request of said court, file in the court a certified copy of the agreement and his statement of approval thereof. Before discontinuing or reducing payment on account of total or partial incapacity under any such agreement, the employer, if it is claimed by or on behalf of the injured person that his incapacity still continues, shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments, with the date of such proposed discontinuance or reduction and the reason therefor, and, such discontinuance or reduction shall not become effective unless specifically approved in writing by the commissioner. The employee may request a hearing on any such proposed discontinuance or reduction within ten days of receipt of such notice. Any such request for a hearing shall be given priority over requests for hearings on other matters. The commissioner shall not approve any such discontinuance or reduction prior to the expiration of the period for requesting a hearing or the completion of such hearing, whichever is later. In any case where the commissioner finds that an employer has discontinued or reduced any payments made in accordance with this section without the approval of the commissioner, such employer shall be required to pay to the employee the total amount of all payments so discontinued or the total amount by which such payments were reduced, as the case may be, and shall be required to pay interest to the employee, at a rate of one and one-quarter per cent per month or portion thereof, on any payments so discontinued or on the total amount by which such payments were reduced, as the case may be, plus reasonable attorney's fees incurred by the employee in relation to such discontinuance or reduction. . . ."

disabled and (2) had violated the provisions of General Statutes § 31-290c[2] by perpetrating a fraud on the fund in receiving such benefits. The defendant contested the fund's position, and the issue of whether to discontinue or reduce his benefits is the subject matter of a pending formal hearing on the workers' compensation claim.[3]

[2] General Statutes § 31-290c provides in relevant part: "Fraudulent claim or receipt of benefits. Penalties. (a) Any person or his representative who makes or attempts to make any claim for benefits, receives or attempts to receive benefits, prevents or attempts to prevent the receipt of benefits or reduces or attempts to reduce the amount of benefits under this chapter based in whole or in part upon (1) the intentional misrepresentation of any material fact including, but not limited to, the existence, time, date, place, location, circumstances or symptoms of the claimed injury or illness or (2) the intentional nondisclosure of any material fact affecting such claim or the collection of such benefits, shall be guilty of a class C felony if the amount of benefits claimed or received, including but not limited to, the value of medical services, is less than two thousand dollars, or shall be guilty of a class B felony if the amount of such benefits exceeds two thousand dollars. Such person shall also be liable for treble damages in a civil proceeding under section 52-564. . . ."

[3] An informal hearing was held before the workers' compensation commissioner concerning the fund's motion to discontinue or reduce the defendant's benefits under General Statutes § 31-296. At that hearing the commissioner refused to grant the fund's motion and scheduled for a full hearing pursuant to General Statutes § 31-300.

General Statutes § 31-300 provides in relevant part: "Award as judgment. Interest. Attorney's fee. Procedure on discontinuance or reduction. . . . No employer or insurer shall discontinue or reduce payment on account of total or partial incapacity under any such award, if it is claimed by or on behalf of the injured person that his incapacity still continues, unless such employer or insurer notifies the commissioner and the employee of such proposed discontinuance or reduction in the manner prescribed in section 31-296 and the commissioner specifically approves such discontinuance or reduction in writing. The commissioner shall render his decision within fourteen days of receipt of such notice and shall forward to all parties to the claim a copy of his decision not later than seven days after his decision has been rendered. If the decision of the commissioner finds for the employer or insurer, the injured person shall return any wrongful payments received from the day designated by the commissioner as the effective date for the discontinuance or reduction of benefits. Any employee whose benefits for total incapacity are discontinued under the provisions of this section and who is entitled to receive benefits for partial incapacity as a result of an award, shall receive those benefits commencing the day following the designated effective date for the discontinuance of benefits for total incapacity.

The fund has instituted a civil action against the defendant for money damages based on a violation of § 31-290c. In addition to criminal sanctions, that statute provides in part: "Such person shall also be liable for treble damages in a civil proceeding under section 52-564."[4]

In connection with this civil action, the plaintiff applied for a prejudgment remedy under General Statutes § 52-278c.[5] The defendant filed a motion to dismiss

In any case where the commissioner finds that the employer or insurer has discontinued or reduced any such payment without having given such notice and without the commissioner having approved such discontinuance or reduction in writing, the commissioner shall allow the claimant a reasonable attorney's fee together with interest at the rate prescribed in section 37-3a on the discontinued or reduced payments."

[4] General Statutes § 52-564 provides: "Treble damages for theft. Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[5] The proposed complaint in that action stated: "TO THE SHERIFF OF THE COUNTY OF HARTFORD, HIS DEPUTY, OR EITHER CONSTABLE OF THE CITY OF WATERBURY

"GREETING:

"BY THE AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby COMMANDED, in accordance with the accompanying order, to attach up to the value of          the real property of Vincent A. Lupachino, at 103 Gail Drive, Naugatuck, CT and to summon [him] to appear before the Superior Court for the Judicial District of Waterbury, 300 Grand Street, Waterbury, Connecticut on the          day of          , 1995 and said appearance to be made by said Vincent A. Lupachino or his attorney(s) by filing a written statement of appearance with the Clerk of said Court on or before the second day following said Return Date, then and there to answer unto the STATE OF CONNECTICUT, acting through Christopher B. Burnham, State Treasurer in a civil action wherein the Plaintiff complains and says:

"1.) On or about October 10, 1988 the defendant Vincent A. Lupachino sustained an injury to his lower back arising out of and in the course of his employment, giving rise to a workers' compensation claim being made and accepted under Chapter 568 of the Connecticut General Statutes.

"2.) As a result of the injury the defendant received disability benefits from his employer or its insurer.

"3.) In that the defendant had a physical impairment of the lower back which preexisted the injury of October 10, 1988, the employer/insurer gave notice of its intention to transfer administration and liability of the claim to the plaintiff, Second Injury Fund of the State of Connecticut (sometimes

the fund's application for a prejudgment remedy on the ground that the Superior Court lacked subject matter jurisdiction, claiming that "jurisdiction belongs in the Workers' Compensation Commission pursuant to Chapter 568 of the Connecticut General Statutes," the act, and not in the Superior Court. The trial court denied the motion to dismiss and granted the fund a prejudgment remedy in the amount of $80,000. This appeal followed.

There are two issues in this appeal. The first is raised by the fund, which maintains that this court does not

hereinafter referred to as the State of Connecticut) pursuant to Conn. Gen. Stat. § 31-349.

"4.) Based upon all of the facts and circumstances, the Plaintiff agreed to accept transfer of the claim pursuant to Conn. Gen. Stat. § 31-349 as of May 8, 1992 and has from that date continued to pay workers' compensation benefits to the defendant.

"5.) Among the benefits paid by the plaintiff and accepted by the defendant are payments for temporary total incapacity pursuant to Conn. Gen. Statutes § 31-307.

"6.) During periods comprising June and July of 1994, December of 1994, January of 1995 and at other diverse times since May 8, 1992, the defendant has had a work capacity and has performed services, including but not limited to physical labor for and on behalf of third parties, while continuing to receive temporary total incapacity payments.

"7.) To induce the plaintiff to continue to make periodic temporary total incapacity payments the defendant represented to the plaintiff that he continued to lack a work capacity and/or failed to disclose that he was performing services including physical labor, for others.

"8.) The defendant knew or should have known that the representations were false and/or that his nondisclosure of material facts would deceive the plaintiff.

"9.) In reliance upon said representations and/or nondisclosure of material facts the plaintiff continued to pay said benefits, and is damaged thereby.

"10.) The conduct of the defendant as aforesaid is tantamount to the commission of larceny as defined in Conn. Gen. Stat. § 53-119 and 'stealing' under Conn. Gen. Stat. § 52-564.

"11.) Notwithstanding the provisions of Conn. Gen. Stat. § 31-284 (a) this action is authorized under Conn. Gen. Stat. § 31-290c.

"WHEREFORE, the Plaintiff claims:

"(a) Money damages;

"(b) Treble damages pursuant to §§ 52-564 and 31-290c;

"(c) Any further equitable relief the Court deems just and proper."

have subject matter jurisdiction because the appeal was not timely filed.[6] The second issue, which is raised by the defendant, is whether the Superior Court improperly ordered the prejudgment remedy.

## I

We first take up the issue of subject matter jurisdiction of this court. "Lack of subject matter jurisdiction may be raised at any time. *Baldwin Piano & Organ Co.* v. *Blake*, 186 Conn. 295, 297, 441 A.2d 183 (1982)." *Park City Hospital* v. *Commission on Hospitals & Health Care*, 14 Conn. App. 413, 417, 542 A.2d 326 (1988), aff'd, 210 Conn. 697, 556 A.2d 602 (1989); *Romanowski* v. *Foley*, 10 Conn. App. 80, 83, 521 A.2d 601, cert. denied, 204 Conn. 802, 525 A.2d 1352 (1987). "Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 245, 558 A.2d 986 (1989), quoting *State* v. *Malkowski*, 189 Conn. 101, 104, 454 A.2d 275 (1983); see *Kohn Display & Woodworking Co.* v. *Paragon Paint & Varnish Corp.*, 166 Conn. 446, 448–49, 352 A.2d 301 (1974); *Carten* v. *Carten*, 153 Conn. 603, 610, 219 A.2d 711 (1966). The fund claims that this court lacks subject matter jurisdiction because the appeal was not timely filed.

The order granting the fund a prejudgment remedy in the amount of $80,000 on real property of the defendant was issued pursuant to General Statutes § 52-278*l*. That statute provides in relevant part: "(a) An order

---

[6] The issue of the timeliness of filing the appeal in this court was first raised by the fund in its brief in this court. The defendant, in his reply brief, responded and briefed the timeliness issue. That issue was argued before this court during oral argument.

. . . granting . . . a prejudgment remedy following a hearing under section 52-278d . . . shall be deemed a final judgment for purposes of appeal. (b) No such appeal shall be taken except within seven days of the rendering of the order from which the appeal is to be taken."

The basic facts in the record relevant to the timeliness issue are as follows. The order for the prejudgment remedy from which the defendant appeals was signed and dated by the trial judge on February 28, 1996. Notice of that action was mailed by the clerk to counsel on Friday, March 8, 1996,[7] the ninth day after February 28, 1996.[8] The defendant filed the appeal on Monday, March 11, 1996, the twelfth day after February 28, 1996. On the record before us, we cannot discern whether the passage of nine days between the signing of the order by the trial judge and the mailing of notice to counsel by the clerk came about because the trial judge did not expeditiously give her order to the clerk or because the clerk did not expeditiously mail notice of that order to counsel.

The fund argues that the judgment was rendered on February 28, 1995, when the trial judge signed the order, that the appeal was taken on March 11, 1996, and, therefore, the appeal is untimely under § 52-278*l* and must be dismissed. Accordingly, it claims that there is no subject matter jurisdiction because § 52-572*l* is jurisdictional. See, e.g., *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 762, 628 A.2d 1303 (1993). In arguing that the appeal is untimely, the fund claims that the language of § 52-278*l* (b) providing that "[n]o such appeal shall be taken except within seven days of the rendering of the order from which the appeal is to

---

[7] The record before this court shows the notation "copies mailed to counsel 3-8-96 [initials illegible]" on the copy of the order of the trial court, signed and dated February 28, 1996.

[8] There were twenty-nine days in February, 1996.

be taken," mandates that the seven day appeal period is to be reckoned from February 28, 1996. The case law, it maintains, is dispositive. It relies on *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 762, *HUD/ Barbour-Waverly* v. *Wilson*, 235 Conn. 650, 668 A.2d 1309 (1995), and *Srager* v. *Koenig*, 36 Conn. App. 469, 651 A.2d 752 (1994), claiming at oral argument that these cases indicate that the appeal period begins on the date the trial judge signed the order. It would appear that the fund claims that General Statutes § 51-53[9] does not apply to § 52-278*l* because the latter statute provides its own appeal period rather than relying on the more general provision for appeal in § 51-53.

The defendant, on the other hand, claims that *Ambroise, HUD/Barbour-Waverly* and *Srager*, the same cases relied on by the fund, support his claim that the order was "rendered" under § 52-278*l*, not when the trial judge signed it, but, rather, when notice of that order was issued by the court clerk. He claims that the record demonstrates that such notice was issued on March 8, 1995, and that his appeal, filed on March 11, 1995, was, therefore, timely as filed within the seven day appeal period. We agree with the defendant that the order was "rendered" under § 52-278*l* on March 8, 1995, the date the court clerk mailed notice to counsel, and that the appeal was, therefore, timely filed.

We begin our analysis by examining *Ambroise*, in which the dispositive issue was whether an appeal from

[9] General Statutes § 51-53 provides: "Clerks to give notice of decrees of court. (a) Whenever any court, including a court of probate, or the judge of any such court acting in any matter coming before him as a judge, makes or renders any decision, order, decree, denial or ruling, unless it is made or rendered in the presence of counsel in the matter, the clerk of the court shall immediately notify counsel, in writing, of the decision, order, decree, denial or ruling.

"(b) The time limited by law for commencing appellate proceedings on the decision, order, decree, denial or ruling shall date from the time when such notice is issued by the clerk."

the denial of a prejudgment remedy could be taken after the expiration of the seven day period specified by § 52-278*l*. *Ambroise* v. *William Raveis Real Estate, Inc.*, supra, 226 Conn. 757–58. In that case, no reference was made at all to when the trial court's order was made or even mailed. Informatively, however, the Supreme Court said: "The procedural facts of the plaintiffs' appeal are undisputed. The parties received notice of the trial court's decision on January 26, 1993. The plaintiffs filed their appeal on February 16, 1993." Id., 759–60. A fair reading of the procedural history of *Ambroise* strongly suggests that the Supreme Court calculated the appeal period from the date that counsel *received* notice of the trial court's decision. It further said that "[b]ecause the jurisdiction of this court is defined by statute . . . non-compliance with § 52-278*l* raises a challenge to [our Supreme Court's] subject matter jurisdiction"; id.; and it dismissed the appeal as untimely. *Ambroise* does not support the fund's position.

*HUD/Barbour-Waverly*, also does not avail the fund. The issue in that case was whether, in an appeal from a judgment of possession in a summary process eviction proceeding, the failure of the defendant to comply with the five day time limit to appeal as specified by General Statutes (Rev. to 1993) § 47a-35[10] deprived this court of

---

[10] General Statutes (Rev. to 1993) § 47a-35, as it existed at the time of the action in *HUD/Barbour-Waverly* v. *Wilson*, supra, 235 Conn. 650, provided: "Stay of execution. Time to appeal. Execution shall be stayed for five days from the date judgment has been rendered, provided any Sunday or legal holiday intervening shall be excluded in computing such five days, except that in an action for nonpayment of rent, if within five days of the date judgment is rendered the defendant deposits with the clerk of the court the full arrearage then the defendant may apply for a stay of execution in accordance with section 47a-37. Notwithstanding the provisions of said section no such stay may exceed three months in the aggregate. The clerk shall distribute such arrearage to the landlord in accordance with an order of the court. An appeal shall not be taken except within such period. If an appeal is taken within such period, execution shall be stayed until the final determination of the cause, unless it appears to the judge who tried the case that the appeal was taken solely for the purpose of delay or unless

subject matter jurisdiction. After a trial, the trial court rendered a judgment of possession in favor of the plaintiff on August 5, 1993. There is no reference in the court's opinion in that case to whether the judgment was rendered in open court in the presence of counsel or whether notice was issued by the clerk to counsel on the same day the trial judge signed the order. Within the five day appeal period, the defendant filed a motion[11] in the trial court for an extension of time to file an appeal pursuant to Practice Book § 4040. That motion was granted on August 16, 1993. Later, on August 30, 1993, nineteen days after the expiration of the appeal period set forth in § 47a-35, the defendant appealed to this court, which dismissed the defendant's appeal. The Supreme Court affirmed our dismissal. In doing so, that court, referring to *Ambroise*, held that the legislature intended that the five day appeal period prescribed by § 47a-35 implicated subject matter jurisdiction, and that failure to comply with that time requirement deprived this court of jurisdiction to hear and decide the defendant's appeal. *HUD/Barbour-Waverly*, unlike the case now before us, was not a case in which the appeal period had purportedly already run when notice of the decision was received by the party seeking to appeal. *HUD/Barbour-Waverly* does not avail the plaintiff.

An examination of *Srager* v. *Koenig*, supra, 36 Conn. App. 469, persuades us that that decision also does not support the fund's claim of untimeliness. *Srager* was an action instituted to recover damages for breach of contract for the sale of certain real property and other relief. The plaintiffs in *Srager* had recorded a notice of

---

the defendant fails to give bond, as provided in section 47a-35a. If execution has not been stayed, as provided in this section, execution may then issue, except as otherwise provided in sections 47a-36 to 47a-41, inclusive."

[11] Neither the defendant's motion for an extension of time nor the trial court's order granting the defendant's motion specified the length of time for which the extension was sought or granted. *HUD/Barbour-Waverly* v. *Wilson*, supra, 235 Conn. 654–55.

lis pendens on September 16, 1993. Pursuant to General Statutes § 52-325a (c), the defendant moved for a discharge of the notice of lis pendens for lack of probable cause. Significantly, in reciting the procedural history, the court in *Srager* stated: "The trial court granted the defendant's motion and notice of the court's order was issued to the parties on September 14, 1994. The plaintiff appealed from the order on September 27, 1994." Id., 470. On appeal to this court, the defendant sought dismissal of the appeal claiming lack of subject matter jurisdiction because the appeal was filed after the expiration of the seven day appeal period set out in § 52-325c (b). That section provides in relevant part: "No appeal shall be taken from such order except within seven days thereof. . . ." Relying on *Ambroise*, this court said: "Our review of General Statutes § 52-325c, informed by the *Ambroise* analysis, leads us to conclude that the failure to appeal within the specified time period deprives this court of subject matter jurisdiction. The language of § 52-325c (b) is clear and is virtually the same as the language of § 52-278*l* (b), which the Supreme Court held to impose such a jurisdictional requirement."[12] Id., 471. After opining that the legislative purpose was advanced by the seven day appeal period, this court concluded by saying: "In this case, the plaintiffs appealed from the discharge of the notice of lis pendens thirteen days after the notice of that order was issued. The court lacks subject matter jurisdiction over this untimely appeal." Id., 473. In *Srager*, this court considered that the date on which notice of the court's order was *issued* was the date to be used in calculating

---

[12] We note that the *Srager* court at this point inserted the following footnote: " 'The time limited by law for commencing appellate proceedings on the decision, order, decree, denial or ruling shall date from the time when such notice is issued by the clerk.' " *Srager* v. *Koenig*, supra, 36 Conn. App. 473 n.5, quoting General Statutes § 51-53 (b); see also Practice Book § 398. We need not decide whether § 51-53 applies to § 52-278*l* on the timeliness issue.

the start of the seven day appeal period. *Srager* does not support the fund's position.

Were we to accept the fund's interpretation of the seven day appeal period in § 52-278*l*, the right of appeal in that section would be meaningless in this case. Accepting its interpretation would have draconian effect. For example, were a judge to sign and date a "decision" and hold onto it until the seven day appeal period ran, there could be no appeal from that "decision." The legislative intent certainly could not have been to provide that the appeal period would have to begin to run before there was a final judgment from which to appeal.

Contrary to the fund's position, we have determined that our case law actually supports the defendant's position as to when the appeal period of § 52-278*l* begins to run. "Our law is clear on this issue. A judgment does not exist as a legal entity until pronounced, expressed, or made known, in some appropriate way. *Goldreyer* v. *Cronan*, 76 Conn. 113, 117, 55 A. 594 [1903]. . . . A judgment is in fact *rendered* in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him. *Hubbard* v. *Planning Commission*, 151 Conn. 269, 272, 196 A.2d 760 [1963]; *Brown* v. *New Haven Taxicab Co.*, 93 Conn. 251, 258, 105 A. 706 [1919];[13] *Hull* v. *Thoms*, 82 Conn. 386, 391,

---

[13] At the time of the decision in *Brown* v. *New Haven Taxicab Co.*, supra, 93 Conn. 251, the following statute was in effect: "Clerks to give notice of decrees of court. Whenever any court, or the judge of any court acting in any matter coming before him as such judge, shall have made or rendered any decision, order, decree, denial or ruling, unless the same shall be made or rendered in the presence of counsel in such matter, the clerk of such court shall forthwith notify said counsel in writing of such decision, order, decree, denial or ruling; and, in case of appellate proceedings thereon, the time limited by law for commencing such proceedings shall date from the time that such notice is issued by such clerk. The provisions of this section

73 A. 793 [1909]; *Bulkeley's Appeal,* 76 Conn. 454, 457, 57 A. 112 [1904]." *Bogaert* v. *Zoning Board of Appeals,* 162 Conn. 532, 535, 294 A.2d 573 (1972).

The decision in *Brown* v. *New Haven Taxicab Co.,* supra, 93 Conn. 258, is significant in resolving the timeliness issue in this case by reference to its definition of "rendering a decision." In *Brown,* there was no indication in the record as to the date on which the judge's decision was given to the clerk. In that case our Supreme Court said, "The date placed by the judge upon a paper is by no means determinative of the date when the paper is handed to the clerk, or when, if at all, the ruling contained is announced in open court. In practice such ruling is not ordinarily announced in any other way than by delivery of the writing to the clerk. When so delivered to the clerk or announced in court the judgment is rendered. . . . This pronouncement of the court it is incumbent upon the clerk to forthwith enter. . . . Where there is no other evidence of the date when judgment is rendered than the action of the clerk in notifying counsel, as in this case, it will be presumed that the clerk acted promptly and the date of the notification will be taken to be the date when the judge informed the clerk of his decision." (Citations omitted; internal quotation marks omitted.) Id.

Moreover, only last year this court said, " 'A judgment is in fact rendered in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him. . . . The judgment of a court is not rendered when the judge arrives at his decision in the privacy of his chambers, nor is the date placed on a paper by the judge determinative of the

shall not apply to courts of probate or judges of probate." General Statutes (1918 Rev.) § 5535.

date when the paper is handed to the clerk. *Bogaert* v. *Zoning Board of Appeals*, [supra, 162 Conn. 535–36]; *Hubbard* v. *Planning Commission*, [supra, 151 Conn. 272]; *Brown* v. *New Haven Taxicab Co.*, [supra, 93 Conn. 258].' " (Citations omitted.) *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn. App. 89, 102, 674 A.2d 1335 (1996).

We conclude that there was no judgment from which an appeal could be taken in this case until the court's decision granting the prejudgment remedy was delivered to the clerk, which in *this* case we presume was the same date on which the clerk mailed notice to counsel. The appeal period in this case could not have begun to run until March 8, 1996. The appeal by the defendant to this court was timely filed.

## II

The defendant makes several arguments in support of his claim that the trial court improperly failed to dismiss the fund's application for a prejudgment remedy. He argues that the failure to dismiss was improper because the fund, in seeking a prejudgment remedy, was asking the Superior Court to adjudicate whether he was entitled to workers' compensation benefits pursuant to § 31-307 (a), a determination that he says the legislature has entrusted solely to the workers' compensation commission. While not contesting that § 31-290c provides the right to a civil action when an individual fraudulently receives temporary total benefits, he claims that the issue for this court to decide is whether the Superior Court is empowered to determine whether he was entitled to such benefits pursuant to § 31-307 (a) in order to adjudicate fully the fund's action pursuant to § 31-290c. Contending that the fund's action is premature, the defendant argues that the fund asks the Superior Court to "modify" and "interpret" his award to such benefits, to "discontinue and/or reduce" them and to

order him to "reimburse" the fund for moneys allegedly illegally received, which actions, he claims, would be clearly contrary to such cases as *Czeplicki* v. *Fafnir Bearing Co.*, 137 Conn. 454, 78 A.2d 339 (1951), and *Hyatt* v. *Milford*, 26 Conn. App. 194, 600 A.2d 5 (1991), appeal dismissed, 224 Conn. 441, 619 A.2d 450 (1995). While we agree that under a scenario such as that in *Czeplicki*, the commissioner has authority to act as fact finder, the facts to be found in a "civil proceeding" pursuant to § 31-290c are not within the statutory authority of the commissioner. The defendant further argues that *Hyatt* applies "perfectly to this cause" where it states: "The doctrine of exhaustion of administrative remedies is designed to prevent piecemeal appeals of a litigant's claim before an administrative agency." (Internal quotation marks omitted.) *Hyatt* v. *Milford*, supra, 200. Therefore, he claims that the Superior Court, having no jurisdiction at this point, cannot and should not act until the workers' compensation commission has made its determination, thereby respecting "the delicate balance between administrative agencies and the courts." In advancing this position, the defendant maintains that a favorable decision by the commissioner, i.e., that he was entitled to temporary total benefits under § 31-307a during the period the fund alleges fraudulent receipt of such benefits by him would bar the fund from proceeding with its civil action pursuant to § 31-290c. This is so, he says, because "the Superior Court could not find that the defendant committed fraud against the fund if the workers' compensation commissioner finds that he was entitled to benefits during the contested period." While agreeing with the trial court that the circumstances do not constitute concurrent jurisdiction, he says that "merely because jurisdiction to determine . . . treble damages lies with the Superior Court, it does not follow that the Superior Court has jurisdiction to determine [his] right to tempo-

rary total benefits pursuant to General Statutes § 31-307 (a), which it must first do before it can reach the issue of . . . treble damages." To permit the Superior Court to make such a finding would, he claims, constitute "an impermissible judicial usurpation of the administrative function."

The fund, on the other hand, claims that it may, under proper statutory construction and available remedies, pursue this civil action independent of any proceedings before the workers' compensation commissioner. In doing so, it argues that the plain language of § 31-290c enables it to proceed in the Superior Court for money damages and that the prosecution of this civil action does not violate the exclusive remedy doctrine. It maintains also that the substantive and procedural rights of the parties pursuant to § 31-290c can be protected only in the Superior Court. In that context, it points out that under § 31-290c it is necessary for the court, in making an independent determination of the facts in such an action, to do so in the context of the burden of proof required, i.e., that of clear and convincing proof of the actions required to assess treble damages pursuant to § 52-564. *Schaffer* v. *Lindy*, 8 Conn. App. 96, 105, 511 A.2d 1022 (1986). The exclusive jurisdiction of this civil proceeding is in the Superior Court and is not subject to the administrative doctrine of the exhaustion of remedies. If it were subject to that doctrine, the fund argues, it could well be precluded from proceeding in the Superior Court, if met by an assertion of the defense of the statute of limitations. We agree with the fund.

A

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 (1992). . . . *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 618 A.2d 1340

(1993). It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 666, 560 A.2d 975 (1989). . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). . . . We have previously recognized that our construction of the Workers' Compensation Act should make every part operative and harmonious with every other part insofar as is possible . . . . *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 104, 491 A.2d 368 (1985). In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991). . . . *Vallaincourt* v. *New Britain Machine/ Litton*, [supra, 390–91]." (Citations omitted; internal quotation marks omitted.) *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 20–21, 658 A.2d 83 (1995). " 'The construction of a statute depends upon its expressed intent when it is taken as a whole.' " *State* v. *Burney*, 189 Conn. 321, 326, 455 A.2d 1335 (1983), quoting *Dombrowski* v. *Fafnir Bearing Co.*, 148 Conn. 87, 90, 167 A.2d 458 (1961). In considering statutory construction, it is prudent to be mindful that, " '[p]rimarily, it is for the legislature, which is the arbiter of public policy, to determine what it shall be.' " *Local 1303 & Local 1378* v. *Freedom of Information Commission*, 191 Conn. 173, 179, 463 A.2d 613 (1983), quoting *General Motors Corp.* v. *Mulquin*, 134 Conn. 118, 132, 55 A.2d 732 (1947). There can be no question but that "[i]t is the province of the legislative department to define rights and prescribe remedies: of the judicial to construe legislative enactments, determine the rights

secured thereby, and apply the remedies prescribed."
*Atwood* v. *Buckingham*, 78 Conn. 423, 428, 62 A. 616
(1905); see *Wilson* v. *Security Ins. Group*, 199 Conn.
618, 628, 509 A.2d 467 (1986); *Genco* v. *Connecticut
Light & Power Co.*, 7 Conn. App. 164, 174, 508 A.2d 58
(1986). A statute, of course, should not be interpreted
to thwart its purpose. *Narel* v. *Liburdi*, 185 Conn. 562,
571, 441 A.2d 177 (1981), cert. denied, 456 U.S. 928, 102
S. Ct. 1974, 72 L. Ed. 2d 443 (1982); *Kron* v. *Thelen*, 178
Conn. 189, 192, 423 A.2d 857 (1979); *Turner* v. *Scanlon*,
146 Conn. 149, 157, 148 A.2d 334 (1959).

The language of § 31-290c (a) is clear and straight-
forward. It provides that any person or his representa-
tive who makes or attempts to make any fraudulent
claim or receives benefits under the act is guilty of a
class C felony, provided that the elements of this crime
as defined in § 31-290c are demonstrated.[14] It also pro-
vides that any such person "shall also be liable for treble
damages in a civil proceeding under § 52-564." General
Statutes § 31-290c (a). Its purpose is evident upon exam-
ination of the statute as a whole.

The fund's proposed complaint, submitted with its
application for a prejudgment remedy, invokes § 31-
290c and the relief it prays for is civil. It claims money
damages and treble damages pursuant to General Stat-
utes §§ 52-564 and 31-290c. It is appropriate to note that
it is agreed, and the trial court so found, that we are not
presented with the matter of concurrent jurisdiction.

In that regard, we are aware that "courts and adminis-
trative agencies often have concurrent jurisdiction, the
common law doctrine of primary jurisdiction is
designed to guide a court in determining whether and

---

[14] It is apparent from § 31-290c (b) that its scope includes not only employ-
ers and employees, but also "[a]ny person . . . who intentionally aids, abets,
assists, promotes or facilitates the making of, or the attempt to make" any
claim for or receipt of benefits as proscribed by this statute.

when it should refrain or postpone the exercise of its own jurisdiction so that an agency may first answer some questions presented. 4 Davis, Administrative Law (1983) § 22:1, p. 81." (Internal quotation marks omitted.) *Cianci* v. *Connecticut Council, AFSCME*, 8 Conn. App. 197, 201 n.3, 512 A.2d 232 (1986). In speaking of concurrent jurisdiction, "[t]ypically, the creation of [an administrative] agency means the addition to the legal system of a new lawmaking and law applying authority, with no explicit subtraction from the previously-existing power of courts. 4 Davis, [supra] § 22:1, p. 81. In such cases, the doctrine of primary jurisdiction dictates that the dispute be directed to the board so as to take advantage of the board's specialized skills and procedures; *Sharkey* v. *Stamford*, 196 Conn. 253, 255–56, 492 A.2d 171 (1985); 4 Davis, supra, 81–82 . . . ." (Internal quotation marks omitted.) Id., 201.

Because the defendant has cast his initial issue in terms of primary jurisdiction, claiming that the Superior Court must stay its hand until the commissioner decides the matter presently before him, we must consider the authority of the workers' compensation commission as compared with that of the Superior Court in these circumstances.

"Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." (Internal quotation marks omitted.) *Andrew Ansaldi Co.* v. *Planning & Zoning Commission*, 207 Conn. 67, 73, 540 A.2d 59 (1988) (*Shea, J.*, concurring), quoting *Connecticut State Employees Assn., Inc.* v. *Connecticut Personnel Policy Board*, 165 Conn. 448, 456, 334 A.2d 909 (1973). "Article fifth, § 1 of the Connecticut constitution proclaims that [t]he powers and jurisdiction of the courts shall be defined by law, and General Statutes § 51-164s provides that

[t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute." (Internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). There are courts that have only limited jurisdiction. For example, in Connecticut, "[o]ur courts of probate have a limited jurisdiction and can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . ." (Citations omitted.) *Heiser* v. *Morgan Guaranty Trust Co.*, 150 Conn. 563, 565, 192 A.2d 44 (1963). "This concept [of limited jurisdiction], however, is not limited to courts. Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves. . . . We have recognized that [i]t is clear that an administrative body must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. . . . It cannot modify, abridge or otherwise change the statutory provisions, under which it acquires authority unless the statutes expressly grant it that power." (Citations omitted; internal quotation marks omitted.) *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988); *DeAlmeida* v. *M.C.M. Stamping Corp.*, 29 Conn. App. 441, 447, 615 A.2d 1066 (1992); see *Lundy Electronics & Systems, Inc.* v. *Tax Commissioner*, 189 Conn. 690, 694, 695, 458 A.2d 387 (1983).

"The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." (Citation omitted.) *State* v. *Luzietti*, 230 Conn. 427, 431, 646 A.2d 86 (1994).

It has "general subject matter jurisdiction." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 195, 629 A.2d 1116 (1993).

In enacting § 31-290c and in providing that any person or his representative who was involved with workers' compensation benefits in a manner interdicted by § 31-290c as set out by its provisions can be liable for damages, the legislature created a new civil proceeding that included the right to recover treble damages after appropriate proof of the elements of this cause of action. The defendant is incorrect when he argues that the Superior Court cannot proceed with its § 31-290c action until the present matter before the commissioner has been fully resolved because that court seeks to adjudicate an issue entrusted solely to the commissioner. He is also incorrect in claiming that that court seeks not only to "modify" and "interpret" his award, but to "discontinue or reduce" it, as well as to have him "reimburse" the fund for moneys he allegedly illegally received. All these alleged actions by the Superior Court, he argues, are in derogation of the commissioner's authority under the act.

We recognize that the modification of an award is a function of the commissioner, as is the determination of an award in the first instance. The commissioner's authority under § 31-315 or § 31-296, however, is totally different from the new statutorily created cause of action and remedy in the Superior Court created by § 31-290c. "The purpose of the workmen's compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault . . . . The underlying objective is to provide for the workman and those dependent on him." (Internal quotation marks omitted.) *Cappellino* v. *Cheshire*, 226 Conn. 569, 575, 628 A.2d 595 (1993), quoting *Klapproth* v. *Turner*, 156 Conn. 276, 279, 240

A.2d 886 (1968); *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 541, 494 A.2d 555 (1985). Section 31-290c is the legislative response to those who have abused or may be abusing the humanitarian purpose of the act by taking advantage of it by fraudulent means. It has ordained accomplishment of this purpose by spelling out the elements of this cause of action and by imposing liability in treble damages in a "civil proceeding" under § 52-564. This "civil proceeding" does not come within the authority of the commissioner. The "civil proceeding" referred to in § 31-290c is a court proceeding.[15]

"It is clear that an award of treble damages is an extraordinary statutory remedy. See *Alaimo* v. *Royer*, 188 Conn. 36, 43, 448 A.2d 207 (1982); *DeMilo* v. *West Haven*, 189 Conn. 671, 676, 458 A.2d 362 (1983)." *Schaffer* v. *Lindy*, supra, 8 Conn. App. 104. "Before treble damages can be imposed, however, the proof must demonstrate a violation of the specific statute authorizing

---

[15] The parties are not in dispute concerning this. What they do dispute is the claim that the court proceeding instituted by the fund against the defendant cannot proceed until the present hearing before the commissioner has been fully resolved. That includes, according to the defendant, the final resolution of any appeal that may be taken from the commissioner's decision, even if that only comes about by virtue of the ultimate decision of our Supreme Court. This was the defendant's position in oral argument before us. When his counsel was asked what would occur in the event that the statute of limitations on the fund's action under § 31-290c had passed, he responded that he believed that that statute would be tolled pending the final resolution of any such appeal from the commissioner's decision. When asked if he had any authority for that claim he indicated that he did not.

In any event, "[t]he term 'proceeding,' as ordinarily used, is generic in meaning and broad enough to include all methods involving the actions of courts, whether controversies properly termed 'actions' or 'special proceedings,' as distinguished from them." *State* v. *Ventola*, 122 Conn. 635, 639, 191 A. 726 (1937). " '[A]ction' is generally defined as a judicial proceeding in which one asserts a right or seeks redress for a wrong." 1 Am. Jur. 2d, Actions § 4 (1994). "The term 'proceeding' is broader than the word 'action.' As ordinarily used, it is broad enough to include all methods of invoking the action of courts and is generally applicable to any step taken to obtain the interposition or action of a court." Id., § 3.

the extraordinary damages." *A-G Foods, Inc.* v. *Pepper-idge Farm, Inc.*, 216 Conn. 200, 213, 579 A.2d 69 (1990). When treble damages are sought pursuant to § 52-564, as here, this court has decided that "clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to § 52-564." *Schaffer* v. *Lindy*, supra, 105.[16] In addition, it is required that in actions seeking to recover double or treble damages under statutes "that the claim for relief shall be specifically based upon the statutory remedy." *Tillinghast* v. *Leppert*, 93 Conn. 247, 250, 105 A. 615 (1919); *Dunbar* v. *Jones*, 87 Conn. 253, 257, 87 A. 787 (1913). That was done in this case; there is no relief sought that the commissioner is authorized to order. Finally, the fund's complaint is clearly based on the statutory cause of action authorizing such extraordinary damages, and not for any other alleged cause of action. *DeMilo* v. *West Haven*, supra, 676.

The § 31-290c action instituted by the fund in this case is a statutory cause of action properly brought in the Superior Court. The fund's claim in its complaint in this case is one at law, it is based on a tort theory and seeks damages. The liability under it is to be determined in a "civil proceeding." The theory of liability, the extraordinary relief and the forum of a "civil pro-

---

[16] In reaching this conclusion in *Schaffer* v. *Lindy*, supra, 8 Conn. App. 104, this court said the following: "Generally, facts which constitute a crime need not be proven beyond a reasonable doubt if they are at issue in a civil action. 30 Am. Jur. 2d, Evidence § 1169. It is ordinarily sufficient in civil cases to prove the existence of the criminal act by a preponderance of the evidence. *Mead* v. *Husted*, 52 Conn. 53, 56 (1884). However, clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, as where this high standard is required to sustain claims which have serious consequences or harsh or far-reaching effects on individuals, to prove willful, wrongful and unlawful acts, *to justify an exceptional judicial remedy*, or to circumvent established legal safeguards . . . . 32A C.J.S., Evidence § 1023; see e.g., *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 368 A.2d 125 (1976)." (Emphasis added.)

ceeding" and accompanying burden of proof all contribute to demonstrate that it is not within the scope of the commissioner's authority. It is wholly independent of and outside the statutory authority of the commissioner. The relief it makes available to a successful plaintiff is strictly tailored to the extraordinary remedy it provides. The legislature, from what we have said, intended that the "civil proceeding" together with the relief it allows upon the appropriate proof be solely within the jurisdiction of the Superior Court.

As pointed out, the trial court determined that this is not a case of concurrent jurisdiction and the defendant agrees. "Concurrent jurisdiction" has been said to mean "the jurisdiction of several different tribunals, each authorized to deal with the same subject-matter at the choice of the suitor. Authority shared by two or more legislative, judicial, or administrative officers or bodies to deal with the same subject matter." Black's Law Dictionary (6th Ed. 1990); see 20 Am Jur. 2d, Courts § 91. We are not presented with a situation of concurrent jurisdiction here.

### B

We turn then to the doctrine of primary jurisdiction. It has been said that that doctrine "applies where a claim is *originally cognizable* in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." (Emphasis added.) *United States* v. *Western Pacific R. Co.*, 352 U.S. 59, 63–64, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956), citing *General American Tank Car Corp.* v. *El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S. Ct. 325, 84 L. Ed. 361 (1940). "The doctrine of primary jurisdic-

tion is invoked only to determine who will initially decide an issue; 3 Davis, Administrative Law Treatise § 19.01; it cannot operate to divest a court of its ultimate jurisdiction." *State ex rel. Golembeske* v. *White,* 168 Conn. 278, 281, 362 A.2d 1354 (1975). The doctrine of primary jurisdiction is used to fix forum priority when the courts and an administrative agency *have concurrent jurisdiction* over an issue. *Far Eastern Conference* v. *United States,* 342 U.S. 570, 574–75, 72 S. Ct. 492, 96 L. Ed. 576 (1952); *Mrs. W.* v. *Tirozzi,* 832 F.2d 748, 759 (2d Cir. 1987). Stated another way, "[t]he threshold issue in determining whether [the] doctrine [of primary jurisdiction] applies is whether both the court and an agency have jurisdiction over the same issue." *Golden Hill Paugussett Tribe of Indians* v. *Weicker,* 39 F.3d 51, 59 (2d Cir. 1994).

"Agency and court jurisdiction to resolve disputes and issues frequently overlap, leading to potential conflicts in resolving issues or disputes. Primary jurisdiction is a doctrine used by courts to allocate initial decisionmaking responsibility between agencies and courts where such overlaps and potential for conflicts exist." 2 K. Davis & R. Pierce, Administrative Law Treatise (3d Ed. 1994) § 14.1, p. 271. Under this view, "[c]ourt jurisdiction is not thereby ousted, but only postponed." *United States* v. *Philadelphia National Bank,* 374 U.S. 321, 353, 83 S. Ct. 1715, 10 L. Ed. 2d 915 (1963).

The doctrine of primary jurisdiction is distinguishable "from the concept of exclusive agency jurisdiction, which refers to matters which an agency alone has the power to adjudicate and of which the court has no jurisdiction." *Mazzola* v. *Southern New England Telephone Co.,* 169 Conn. 344, 349, 363 A.2d 170 (1975). Primary jurisdiction does not apply in this case because, as we have demonstrated, the passage of § 31-290c was not intended to, and does not, authorize the commis-

sioner to determine the issue of liability in the "civil proceeding" under that statute or to award relief by way of treble damages. The jurisdiction under § 31-290c resides *solely* with the Superior Court. "[A] court may not refer a controversy within its jurisdiction to an agency under [the primary jurisdiction] doctrine where the agency itself lacks jurisdiction; the court's jurisdiction in such cases is exclusive. *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 480–81, 234 A.2d 825 [1967]; 73 C.J.S., Public Administrative Bodies and Procedure, § 40." Id., 349.

## C

Davis has said that "[p]rimary jurisdiction is conceptually analogous to exhaustion of administrative remedies. . . . Both are prudential doctrines created by the courts to allocate between courts and agencies the initial responsibility for resolving issues and disputes in a manner that recognizes the differing responsibilities and comparative advantages of agencies and courts." 2 K. Davis & R. Pierce, supra, § 14.1, pp. 271–72. This court has said that "[i]t is a well settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 357, 377 A.2d 1099 (1977)." (Citations omitted.) *Silverman* v. *New Haven*, 19 Conn. App. 360, 364–65, 562 A.2 562, cert. denied, 212 Conn. 812, 565 A.2d 537 (1989); *Norwich* v. *Norwalk Wilbert Burial Vault Co.*, 208 Conn. 1, 4, 544 A.2d 152 (1988); 2 K. Davis & R. Pierce, supra, § § 14.1, 15.1 et seq.; 2 Am. Jur. 2d, Administrative Law § 505 (1994). This doctrine of exhaustion applies, however, when "a claim is cognizable in the first instance by an administrative agency alone." *United States* v. *Western Pacific R. Co.*, supra, 352 U.S. 63; *Golden Hill Paugussett Tribe of Indians*

v. *Weicker*, supra, 39 F.3d 58. The doctrine of exhaustion of administrative remedies is not applicable to the circumstances of this case because the *sole* jurisdiction under § 31-290c is in the Superior Court.[17]

Contrary to the defendant's claim, the fund's § 31-290c action is not premature. The Superior Court has sole jurisdiction of this action and is not required, as the defendant claims, to stay its hand. "Generally, a court with jurisdiction over a case has not only the right, but also the duty, to exercise that jurisdiction, and to render a decision in a case before it." 20 Am. Jur. 2d, Courts § 61, pp. 377–78 (1995).[18] One court put it this way: "The jurisdiction of the court of the subject matter was invoked by the complaint of the plaintiffs herein. If that complaint stated a cause of action, then and in that event the court acquired jurisdiction and the power and the duty to decide the case. 1 Freeman on Judgments, 5 Ed., § 338; 21 C.J.S. Courts § 33; *New River, H. & W. R. Co.* v. *Honaker*, 119 Va. 641, 89 S.E. 960 [1916] . . . *Belles* v. *Miller*, 10 Wash. 259, 38 P. 1050 [1894], citing *United States* v. *Arrendondo*, 6 Pet. 691, 31 U.S. 691, 8 L. Ed. 547 [1828]; *Goodman* v. *Winter*, 64 Ala. 410, 38 Am. Rep. 13 [1879]; *Grignon's Lessee* v. *Astor*, 2 How. 319, 43 U.S. 319, 11 L. Ed. 283 [1844]; *United States* v. *Maney*, C.C.D. Minn., 61 F. 140 [1894]." *Buckman* v. *United Mine Workers of America*, 80 Wyo. 199, 210, 339 P.2d 398 (1959).

The judgment is affirmed.

In this opinion the other judges concurred.

[17] In this context, the defendant's reliance on *Hyatt* v. *Milford*, supra, 26 Conn. App. 194, is misplaced.

[18] There may be certain situations where a court having jurisdiction over a case may in its discretion decline to exercise it as where the doctrine of forum nonconveniens is applicable. See 20 Am. Jur. 2d, Courts § 61 (1995). For the doctrine of forum nonconveniens to be invoked, the existence of another forum is necessary. There is no other available forum in the case before us.