[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Leighton V. is a six year old child currently in the custody of the Department of Children and Families (DCF) pursuant to a neglect commitment. Through his attorney, Leighton V. seeks a court order requiring DCF to return him to the care of his maternal grandmother.[1] The issue before the court is whether the court has the authority to order DCF to return a child, who is committed to its care pursuant to a neglect commitment, to a specific relative caretaker, without first requiring the child to exhaust his administrative remedies.
DCF first obtained custody of Leighton V. on May 7, 1993, when Leighton was one year old. At that time, according to the offer of proof made by Leighton V., he was placed by DCF with his maternal grandmother. He has continuously lived with his maternal grandmother except for a five month period in 1996. Leighton W. asserts that on August 27, 1998 DCF picked him up at school at the end of the school day and transported him to another foster home. Neither Leighton V. nor his maternal grandmother were given notice of DCF's intentions prior to his removal. Leighton V. claims that DCF improperly removed him from the care of his maternal grandmother without prior notice and an opportunity for a hearing. He has asked this court to order DCF to return him to the care of his maternal grandmother.
DCF claims that the request for a court order should be dismissed because Leighton V. has failed to exhaust his administrative remedies. DCF asserts that it has regulations in place that provide Leighton V. with an administrative hearing to determine the appropriateness of DCF's actions.
At the outset, it is important to clarify the precise common law doctrine that is at issue in this case. Although the state asserts that the doctrine of exhaustion of administrative remedies is implicated here, the question is more appropriately one of primary jurisdiction. CT Page 11456
"Primary jurisdiction is conceptually analogous to exhaustion of administrative remedies. . . Both are prudential doctrines created by the courts to allocate between courts and agencies the initial responsibility for resolving issues and disputes in a manner that recognizes the differing responsibilities and comparative advantage of agencies and courts." 2 K. Davis R. Pierce, Administrative Law Treatise (3d Ed. 1994) sec. 14.1, pp. 271-72. See also Second Injury Fund v. Lupachino,45 Conn. App. 324, 350 (1997). The doctrine of exhaustion of administrative remedies applies to situations in which initial jurisdiction over the claim is exclusively with an administrative agency. Mazzolav. Southern New England Telephone Co., 169 Conn. 344, 349 (1975). The precept of primary jurisdiction pertains to matters over which courts and administrative agencies have concurrent jurisdiction. "In that courts and administrative agencies often have concurrent jurisdiction, the common law doctrine of primary jurisdiction 'is designed to guide a court in determining whether and when it should refrain or postpone the exercise of its own jurisdiction so that an agency may first answer some questions presented.' 4 Davis, Administrative Law (1983) sec. 22:1, p. 81.'"Cianci v. Connecticut Counsel AFSCME, 8 Conn. App. 197, 201 n. 3 (1986). See also Second Injury Fund v. Lupachino,45 Conn. App. 324, 342 (1997).
The doctrine of exhaustion of administrative remedies does not apply to the issue at hand because DCF does not have exclusive jurisdiction to determine the placement of a child in neglect proceedings. Rather, DCF shares concurrent jurisdiction with the court and the question is whether the court should defer primary jurisdiction to the agency. After considering the particular circumstances of this case, the court answers that question in the negative and determines that the matter is appropriately before this court for review.
Upon the commitment of a child after a finding by a court that the child is neglected, uncared-for, or dependent, DCF has the statutory authority to place the child with a foster family, in the home of a relative, or with a child caring agency. General Statutes sec. 46b-129(d). DCF is also obligated to remove a child from a foster family upon being satisfied of the ill treatment of the child or the unsuitableness of the foster family. General Statutes sec. 17a-100. Moreover, DCF has the statutory authority to provide general supervision over the welfare of children who require the care and protection of the state, General Statutes sec 17a-90(a), and to issue such regulations as necessary and CT Page 11457 proper to assure the adequate care, health and safety of children under its care and general supervision, General Statutes sec.17a-90(c).
While DCF's responsibilities with respect to a child committed to its care are extensive, its jurisdiction over the placement and care of a committed child is not exclusive. The court maintains jurisdiction over proceedings concerning neglected children committed to the care of DCF and possesses the authority to issue appropriate orders.
By statute, juvenile matters over which the superior court has jurisdiction is defined as "all proceedings concerning uncared-for, neglected or dependent children and youth within this state. . ." (emphasis supplied.) General Statutes sec.46b-121(a). It is through the authority of the court that a child is committed to the care of DCF in the first place. General Statutes sec. 46b-129(d). The statutes governing neglect proceedings provide the court with broad powers to insure the appropriate care of children committed to DCF. The court has the authority to "make and enforce such orders . . . as it deems necessary or appropriate to secure the welfare, protection, proper care and suitable support of a child or youth subject to its jurisdiction or otherwise committed to or in the custody of the Commissioner of Children and Families." General Statutes sec. 46b-121(b). The court possesses "the authority to grant and enforce injunctive relief, temporary or permanent in all proceedings concerning juvenile matters."Id. Any child placed with DCF may petition the court for "appropriate relief, including temporary and permanent injunctive relief" for deprivation of his or her personal, property or civil rights without due process of law. General Statutes sec. 17a-16(i).
The question is not therefore whether the court possesses jurisdiction to entertain the motion of Leighton V. for an order returning him to the home of his maternal grandmother, but whether the court should require him to first seek relief through an administrative hearing. As a general rule, this court requires parties in neglect proceedings to pursue appropriate remedies through administrative proceedings prior to invoking judicial relief. The court customarily allows DCF to initially decide issues through an administrative hearing on the basis of the rationale underlying the doctrine of primary jurisdiction. The doctrine is "grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a CT Page 11458 reviewing court will have the benefit of the agency's findings and conclusions." Sharkey v. Stamford, 196 Conn. 253, 255
(1985). The policy is also motivated by the belief that deferral to agency adjudication in the first instance may render review by the court unnecessary. See Johnson v. Department of PublicHealth, 48 Conn. App. 102, 112 (1998).
The invocation of the doctrine of primary jurisdiction however is not appropriate in those instances in which "resort to agency proceedings may be futile and might also work severe harm on the party seeking relief." Sharkey v. Stamford, supra,196 Conn. 257. In this instance, Leighton V. does not have an adequate administrative remedy available to him. The agency regulations governing the removal of a child from relative or foster care do not grant him the right to request an administrative hearing. Only the out of home care provider is granted the right to request a hearing on the removal of a child from his or her care by the Department's regulations. Regs., Conn. State Agencies sec. 17a-100-5. See also Regs., Conn. State Agencies sec. 17a-100-3. Moreover, it is also unclear that any request for an administrative hearing would be considered by the agency in light of section 17a-100-5(b) of the Regulations of Connecticut State Agencies which allows the agency to deny a request for a removal hearing when court proceedings potentially affecting custody are in progress.
Leighton V. would also suffer irreparable harm by the delay that would accompany a deferral by this court to the agency for an administrative hearing. Pursuant to the regulations, the agency has thirty days from the date of the request to schedule a hearing. The hearing may also be continued or postponed at the discretion of the hearing officer. Regs., Conn. State Agencies sec. 17a-100-8(a). The hearing officer has an additional thirty days from, the date of the hearing to issue his or her decision. Regs. Conn. State Agencies sec. 17a-100-13(a).
While a few months may be a short time in the realm of litigation, it can feel like an eternity to a small child. Although quoted approvingly by our Supreme Court in the context of the removal of a child from his or her family, the following sentiment applies equally to the dislocation of a child from his or her long term care provider and psychological parent: "The delays that are annoying and frustrating to adults . . . can permanently damage children and their families. . . [Courts] should give highest priority to, and set rapid hearing schedules CT Page 11459 for, cases where delays will harm children irreparably. . ." (quoting the American Bar Association Presidential Working Group on the Unmet Legal Needs of Children and Their Families, America's children at Risk: A National Agenda for Legal Action (1993) p. 56.) Pamela B. v. Ment, 244 Conn. 296, 314 (1998).
Time is of the essence because a stable relationship is of crucial importance in a young child's life. "Continuity of relationships is essential for a child's healthy development . . . Since continuity may not play as significant a role in later life its importance may be underrated by adult decision-makers. [A child's] growth may be disrupted when upheavals and changes in the external world are added to the inevitable internal ones . . . because emotional attachments are tenuous and vulnerable in early life, and children need stability of relationships for growth and development." (quoting J. Goldstein, A. Solnit, S. Goldstein and A. Freud, The Best Interests of the Child; The Least Detrimental Alternative (1966) pp. 19-20) Pamela B. v. Ment, 244 Conn. 296,340 (1998) (Berdon, J concurring in the result).
For the foregoing reasons, DCF's motion to dismiss is denied and the matter is set down on October 26, 1998 for a hearing on Leighton V.'s request for an order returning him to his maternal grandmother.
Judge Jon M. Alander