# SANDHYA DESMOND *v.* YALE-NEW HAVEN HOSPITAL, INC., ET AL.
## (AC 33072)

Gruendel, Lavine and Espinosa, Js.

Argued January 10—officially released September 11, 2012

*Eric M. Desmond,* for the appellant (plaintiff).

*Andrew A. Cohen,* for the appellees (defendants).

*Opinion*

ESPINOSA, J. The plaintiff, Sandhya Desmond, appeals from the judgment of the trial court dismissing her complaint against the defendants, Yale-New Haven Hospital, Inc. (hospital), and Yale-New Haven Health Services, Inc., alleging workers' compensation fraud; statutory negligence; breach of contract; violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; and violations of her right to due process under the Connecticut constitution. The plaintiff claims that the court improperly determined that (1) it lacked jurisdiction over her claims because the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., barred her from bringing an action in the Superior Court and (2) its decision dismissing her claims did not violate her right to due process under the state constitution.[1] We affirm the judgment of the trial court.

---

[1] Additionally, the plaintiff claims that the court improperly determined that the doctrine of exhaustion of administrative remedies precluded her from bringing her action in the Superior Court. We need not reach this argument, however, because we conclude that the court properly dismissed the action upon its determination that the exclusivity provision of the act barred the plaintiff's claims. See part I of this opinion.

The following undisputed facts are relevant to our consideration of this appeal. At all times relevant to this appeal, the plaintiff was an employee of the hospital. On December 30, 2004, she was injured in the course of her employment. According to the plaintiff, she suffered a spill-related fall while at work and subsequently was diagnosed with bilateral, acute posttraumatic carpal tunnel injuries. Her physicians have advised her that, absent medical treatment, she permanently will be unable to use her hands.

Subsequently, she filed a workers' compensation claim with regard to her injury, and the defendants accepted the claim. On March 6, 2008, she filed a federal action in United States District Court for the District of Connecticut, in which she alleged various claims under state law and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. On March 23, 2009, the District Court granted the defendants' motion to dismiss as to the plaintiff's state law claims, allowing the action to proceed only on her claim under the Americans with Disabilities Act.

On May 20, 2010, the plaintiff filed in the Superior Court the operative complaint in the present case. The complaint contained ten counts, alleging against each of the defendants workers' compensation fraud, statutory negligence, breach of contract, unfair and deceptive acts and practices in violation of CUTPA and delay in the delivery of benefits under the act in violation of the plaintiff's state constitutional right to due process. The complaint alleged that the defendants had made various filings with the workers' compensation commission (commission) in a bad faith and fraudulent attempt to delay treatment. The complaint alleged that these bad faith attempts to delay treatment caused the plaintiff's condition to worsen, as she did not receive necessary treatment.

On June 7, 2010, the defendants filed a motion to dismiss, alleging that the exclusivity provision of the act barred the action and that the plaintiff had failed to exhaust her administrative remedies under the act. The court granted the defendants' motion to dismiss on December 16, 2010. Relying on our Supreme Court's decision in *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 870 A.2d 1066 (2005), the court held that the plaintiff's claims did not allege conduct that was sufficiently egregious to remove the claims from the exclusive jurisdiction of the commission. The plaintiff filed the present appeal on January 20, 2011.

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Mayfield* v. *Goshen Volunteer Fire Co.*, 301 Conn. 739, 744, 22 A.3d 1251 (2011).

I

First, the plaintiff claims that the court improperly held that it lacked jurisdiction over her claims because the exclusivity provision of the act barred her from bringing an action in the Superior Court. The plaintiff argues that the court erroneously determined that its analysis was controlled by *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 487, and, instead, maintains that General Statutes § 31-290c establishes a civil cause of action over which the commission lacks jurisdiction. In the alternative, the plaintiff argues that, if *DeOliveira* does apply and actions under § 31-290c ordinarily must be brought before the commission, the court improperly held that the present case did not

involve egregious conduct that warranted an exception from the general rule of exclusivity. We disagree.

General Statutes § 31-284 (a) lays out the exclusivity provision of the act. It provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . . All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . are abolished other than rights and claims given by this chapter . . . ." General Statutes § 31-284 (a).

Section 31-290c (a) provides: "Any person or his representative who makes or attempts to make any claim for benefits, receives or attempts to receive benefits, prevents or attempts to prevent the receipt of benefits or reduces or attempts to reduce the amount of benefits under this chapter based in whole or in part upon (1) the intentional misrepresentation of any material fact including, but not limited to, the existence, time, date, place, location, circumstances or symptoms of the claimed injury or illness or (2) the intentional nondisclosure of any material fact affecting such claim or the collection of such benefits, shall be guilty of a class C felony if the amount of benefits claimed or received, including but not limited to, the value of medical services, is less than two thousand dollars, or shall be guilty of a class B felony if the amount of such benefits exceeds two thousand dollars. *Such person shall also be liable for treble damages in a civil proceeding under section 52-564.*" (Emphasis added.)

General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives

and conceals stolen property, shall pay the owner treble his damages." "[S]tatutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119. . . . A person commits larceny within the meaning of . . . § 53a-119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. An owner is defined, for purposes of § 53a-119, as any person who has a right to possession superior to that of a taker, obtainer or withholder. . . . Conversion can be distinguished from statutory theft as established by § 53a-119 in two ways. First, statutory theft requires an intent to deprive another of his property; second, conversion requires the owner to be harmed by a defendant's conduct. Therefore, statutory theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." (Citations omitted; internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 113–14, 46 A.3d 175 (2012).

Violations of § 31-290c, a criminal statute, may be prosecuted by the state's attorney, not by private individuals. See General Statutes § 31-290d (a) ("There shall be a workers' compensation fraud unit within the office of the Chief State's Attorney in the Division of Criminal Justice. The unit, under the supervision of the Chief State's Attorney, may, upon receipt of a complaint, at the request of the chairman of the Workers' Compensation Commission or on its own initiative, investigate cases of alleged fraud involving any claim for benefits, any receipt or payment of benefits, or the insurance or self-insurance of liability under sections 31-275 to 31-355a, inclusive."). Accordingly, § 31-290c does not afford the plaintiff a private right of action. Rather, § 31-290c confers to the plaintiff the right to bring an action

for statutory theft under § 52-564. See *Delpier* v. *Connecticut Interlocal Risk Management Agency*, Superior Court, judicial district of Waterbury, Docket No. CV-01-0164366 (November 28, 2001) (31 Conn. L. Rptr. 97) ("[§ 31-290c], on its face, does not provide for a private right of action but rather enables a victim to bring an action under . . . § 52-564, the civil theft statute").

In *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 346, 695 A.2d 1072 (1997), this court held that "[§] 31-290c is the legislative response to those who have abused or may be abusing the humanitarian purpose of the act by taking advantage of it by fraudulent means. It has ordained accomplishment of this purpose by spelling out the elements of this cause of action and by imposing liability in treble damages in a 'civil proceeding' under § 52-564." Concluding that the plaintiff, the second injury fund of the treasurer of the state of Connecticut, properly had alleged a cause of action under § 52-564, this court explained: "When treble damages are sought pursuant to § 52-564, as here, this court has decided that clear and convincing proof[2] of the actions alleged is required in order to assess treble damages pursuant to § 52-564. . . . In addition, it is required that in actions seeking to recover double or treble damages under statutes that the claim for relief shall be specifically based upon the statutory remedy. . . . That was done in this case; there is no relief sought that the commissioner is authorized to order. Finally, the fund's complaint is clearly based on the statutory cause of action authorizing such extraordinary damages, and not for any other alleged cause of action." (Citations omitted; internal quotation marks omitted.) Id., 347.

[2] Since *Second Injury Fund*, our Supreme Court has held that the appropriate standard of proof in actions for treble damages under § 52-564 is that of a preponderance of the evidence. *Stuart* v. *Stuart*, 297 Conn. 26, 52–53, 996 A.2d 259 (2010).

In the present case, counts one and two of the complaint each allege[3] in relevant part: "[The defendants] sought, in violation of [General Statutes] § 31-290c et seq., to prevent or attempted to prevent the receipt of benefits, or to reduce or attempted to reduce the amount of benefits, provided to or received by [the plaintiff] under the Act. . . .

"[The defendants] sought a reduction in benefits provided to or received by [the plaintiff] by communicating one or more intentional misrepresentations of material fact or, alternatively, [the defendants] sought a reduction in benefits provided to or received by [the plaintiff] by intentionally failing to disclose or misrepresenting one or more material facts, or, alternatively, [the defendants] sought a reduction in benefits provided to or received by [the plaintiff] by casting [the plaintiff] and her workers' compensation claim in a false light by making certain misrepresentations . . . .

"[The defendants] sought to discontinue medical treatment provided to or received by [the plaintiff] by communicating one or more intentional misrepresentations of material fact or, alternatively, [the defendants] sought a reduction in medical treatment provided to or received by [the plaintiff] by intentionally failing to disclose or misrepresenting one or more material facts, or, alternatively, [the defendants] sought a reduction in benefits provided to or received by [the plaintiff] by casting [the plaintiff] and her workers' compensation claim in a false light by making certain misrepresentations . . . ."

We conclude that the plaintiff did not allege a cause of action for statutory theft under § 52-564. Unlike the complaint in *Second Injury Fund*, the complaint in the

---

[3] Count one is directed against the hospital, and count two is directed against Yale-New Haven Health Services, Inc. The two counts are identical in all other respects.

present case neither alleges nor purports to allege any of the elements of statutory theft. We refuse to construe the complaint, which makes no mention of § 52-564 until its prayer for relief, as making a claim of statutory theft. See *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 573 n.12, 864 A.2d 1 (2005) ("[t]he interpretation of pleadings is always a question of law for the court and . . . our interpretation of the pleadings therefore is plenary" [internal quotation marks omitted]). Rather, we construe counts one and two of the complaint, despite their labels to the contrary; *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 348, 780 A.2d 98 (2001) ("the labels placed on the allegations by the parties [are] not controlling"); to allege only that the defendants delayed in bad faith the workers' compensation claims of the plaintiff.

Our Supreme Court concluded in *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 501, that "Connecticut does not recognize a cause of action for bad faith processing of a workers' compensation claim . . . ." In reaching this conclusion, our Supreme Court reviewed the contours of the exclusivity provision of the act. Id., 495–501. First, the court recognized that the exclusivity provision was jurisdictional in nature: "The legislature . . . expressly has conferred jurisdiction upon the commission to adjudicate claims related to untimely payment of benefits and has developed a scheme under which remedies may be provided. As a general matter, the commissioners have jurisdiction to hear all claims . . . arising under [the act] . . . ." (Internal quotation marks omitted.) Id., 496–97. The court noted that "in determining whether a cause of action is barred by the exclusivity provision, the appropriate question is whether the act is applicable to the injury at issue." Id., 498. Ultimately, the court concluded that "we must construe the exclusionary provision's prohibition on damages actions for injuries 'arising out

of and in the course of . . . employment' to include injuries arising out of and in the course of the *workers' compensation claims process.*" (Emphasis in original.) Id., 504.

Pursuant to *DeOliveira,* the plaintiff's claims alleging a bad faith delay in processing her workers' compensation claims fall within the exclusive jurisdiction of the commission. In *DeOliveira,* our Supreme Court clearly stated that the exclusionary provision removed from the jurisdiction of the court any damages action for an injury arising out of the workers' compensation claims process. Id. Applying the rule articulated in *DeOliveira* to the facts of this case, it is clear that the plaintiff's claimed injuries, allegedly caused by the defendants' bad faith delays in medical treatment, arose out of and in the course of the workers' compensation claims process. Therefore, we conclude that the plaintiff's alleged injuries fall within the jurisdiction of the commission and that, accordingly, the court properly granted the defendants' motion to dismiss.

We are not persuaded by the plaintiff's argument that, even if *DeOliveira* applies, the trial court improperly held that the present case did not involve egregious conduct that warranted an exception from the general rule of exclusivity. In *DeOliveira,* the court noted that "there could be an instance in which an insurer's conduct related to the processing of a claim, separate and apart from nonpayment, might be *so egregious* that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act. Some other jurisdictions have recognized such a limitation. See, e.g., *Unruh* v. *Truck Ins. Exchange,* 7 Cal. 3d 616, 620–21, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972) (insurer's agent misrepresented identity to claimant, caused her to become emotionally involved with him and induced her to engage in unusual activities

beyond her normal physical capabilities while another person filmed her, resulting in aggravation of her physical injury and physical and mental breakdown requiring hospitalization upon claimant discovering deceit); *Young* v. *Hartford Accident & Indemnity Co.*, 303 Md. 182, 193, 492 A.2d 1270 (1985) (plaintiff who suffered emotional trauma after being assaulted at work alleged that carrier, in attempt to reduce its monetary exposure, insisted on psychiatric examination with deliberate intent that plaintiff either commit suicide or drop her claim, and plaintiff thereafter attempted suicide)." (Emphasis in original.) *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 507.

In the present case, even if we afford the plaintiff's allegations their most damaging interpretation, the defendants' conduct was not on the level of egregious behavior that the court in *DeOliveira* recognized could provide an exception to the exclusivity provision. Rather, the plaintiff's allegations of bad faith processing of her claim by the defendants are the kind of assertions that routinely are made in workers' compensation cases, and, in fact, closely resemble the claims made by the plaintiff in *DeOliveira*. The plaintiff in *DeOliveira* claimed that he suffered from depression due in part to the nonpayment of benefits and the way that his employer responded to his workers' compensation claim. Id., 491–92. The plaintiff's physicians determined that, as a result of this depression, he was totally disabled. Id., 491. In the present case, the plaintiff similarly alleges that the defendants' mishandling of her workers' compensation claim has caused her further injury. This is not the kind of egregious conduct present in *Unruh* and *Young*, cited by the court in *DeOliveira* as examples of cases involving conduct that could warrant an exception from the exclusivity provision. Accordingly, we agree with the court that the plaintiff's claim properly is within the jurisdiction of the commission.

## II

Next, the plaintiff claims that the court improperly determined that its decision dismissing her claims did not violate her right to due process under the Connecticut constitution.[4] She argues that the act is premised on the belief that compromising plaintiffs' rights to bring actions in tort is justifiable only to the extent that it provides them with an efficient system for compensation. In support of this point, she cites to the decision of this court in *Martinez* v. *Southington Metal Fabricating Co.*, 101 Conn. App. 796, 800, 924 A.2d 150, cert. denied, 284 Conn. 930, 934 A.2d 246 (2007), in which this court stated that "our case law on workers' compensation exclusivity reflects the proposition that these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Internal quotation marks omitted.) She maintains that, in the present case, the act is unable to provide " 'relatively quick and certain compensation' " and, accordingly, it is not a reasonable alternative to the enforcement of her constitutional rights.[5] This claim is without merit.

In *Mello* v. *Big Y Foods, Inc.*, 265 Conn. 21, 34–35, 826 A.2d 1117 (2003), our Supreme Court held that the exclusivity provision of the act did not violate a

[4] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[5] Additionally, the plaintiff contends that the act deprives her of her right to a jury trial in violation of article first, § 19, of the constitution of Connecticut. The plaintiff did not raise this claim at trial and has not requested any extraordinary level of review. "[This] court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . . To allow such a claim to be raised on appeal would be nothing more than a trial by ambuscade of the trial judge." (Citation omitted; internal quotation marks omitted.) *Solano* v. *Calegari*, 108 Conn. App. 731, 742, 949 A.2d 1257, cert. denied, 289 Conn. 943, 959 A.2d 1010 (2008). Accordingly, we decline to review this claim.

plaintiff's right to due process under the Connecticut constitution by preventing a plaintiff from bringing a negligence action against her employer for injuries suffered in the course of her employment. First, the court noted that article first, § 10, of the constitution of Connecticut "restricts the power of the legislature to abolish a legal right existing at common law prior to 1818 without also establishing a reasonable alternative to the enforcement of that right." (Internal quotation marks omitted.) Id., 32. Additionally, the court explained that "in determining whether an alternative is reasonable, a court need only consider the aggregated benefits of the legislative alternative and assess whether those aggregated benefits reasonably approximate the rights formerly available under the common law." Id., 32–33. On the facts of that case, the court concluded that "the act's rights and remedies provide a reasonable alternative to the plaintiff's common-law right to bring a negligence action for damages resulting from her [injury]." Id., 34.

In the present case, the plaintiff has not availed herself of the various remedies available to her within the workers' compensation framework. See General Statutes § 31-297. She admits that she has not requested a hearing before the commission to consider her claim that the defendants unreasonably have delayed providing her certain medical treatment. Therefore, at this stage, it is pure speculation that the commission would not quickly resolve these claims. The plaintiff has not demonstrated that the workers' compensation framework is an inadequate alternative to the enforcement of her rights, and the court properly did not find a violation of her state constitutional right to due process.

The judgment is affirmed.

In this opinion the other judges concurred.