******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## SANDHYA DESMOND *v.* YALE NEW HAVEN HOSPITAL, INC.[*]

Superior Court, Judicial District of Waterbury,
Complex Litigation Docket
File No. X06-CV-24-6075921-S

Memorandum filed January 16, 2025

*Proceedings*

Memorandum of decision on defendants' motion to strike plaintiff's amended complaint. *Motion granted*.

*Eric Desmond*, for the plaintiff.

*Phyllis M. Pari*, for the defendants.

*Opinion*

WILSON, J.

### MEMORANDUM OF DECISION

The issue presented before this court is whether the court should grant the defendants' motion to strike the plaintiff's amended complaint in its entirety on the grounds that: (1) the plaintiff's claims of statutory theft are barred by the exclusivity provision of the Workers' Compensation Act (act), General Statutes § 31-284 (a); (2) the plaintiff's claims are barred by the absolute litigation privilege because they arise out of statements and communications allegedly made in quasi-judicial proceedings; and (3) the amended complaint fails to state legally cognizable claims of statutory theft. For the reasons set forth herein, the court grants the defendants' motion to strike.

I
STATEMENT OF THE CASE AND
PROCEDURAL HISTORY

On December 21, 2023, the plaintiff, Sandhya Desmond, commenced this action by service of process on

---

[*]Affirmed. *Desmond* v. *Yale New Haven Hospital, Inc.*, 239 Conn. App. 140,      A.3d.      (2026).

the defendants, Yale-New Haven Hospital, Inc. (hospital), Letizia, Ambrose & Falls, P.C. (law firm), and Attorney Neil Ambrose. Thereafter, on February 5, 2024, the plaintiff filed an amended complaint. (Docket Entry No. 103.00.) The amended complaint alleges the following facts.

The plaintiff was injured in the course of her employment at the hospital and filed a claim for workers' compensation benefits. In connection with her workers' compensation claim, the hospital issued indemnity benefit payments to the plaintiff arising out of her work injuries and their related effects. As it relates to the present case,[1] the hospital issued workers' compensation benefit checks to the plaintiff in 2018 and 2020 totaling $18,091.98.[2] The plaintiff failed to timely deposit or cash the subject checks, rendering them stale. Therefore, the plaintiff, through her workers' compensation counsel, asked the hospital to reissue the checks, which it did.[3] Before the checks were reissued, however, the plaintiff alleges that the hospital, through its counsel, represented to the plaintiff's workers' compensation counsel and the Workers' Compensation Commission (commission) that it could not ascertain whether the checks had been negotiated, given the age of the checks. In the meantime, however, the plaintiff received three communications from the hospital informing the plaintiff that its records revealed that three of the checks payable to the plaintiff had been uncashed, and providing instructions on how to request the reissuance of the checks. Specifically, the communications directed the plaintiff to complete and

[1] The parties have been engaged in litigation as it relates to the plaintiff's workers' compensation claim for over fifteen years. See *Desmond* v. *Yale-New Haven Hospital, Inc.*, 138 Conn. App. 93, 50 A.3d 910, cert. denied, 307 Conn. 942, 58 A.3d 258 (2012) (*Desmond I*); *Desmond* v. *Yale-New Haven Hospital, Inc.*, 181 Conn. App. 201, 185 A.3d 665, cert. denied, 330 Conn. 902, 191 A.3d 1001 (2018) (*Desmond II*); *Desmond* v. *Yale-New Haven Hospital, Inc.*, 212 Conn. App. 274, 275 A.3d 735, cert. denied, 343 Conn. 931, 276 A.3d 433 (2022) (*Desmond III*).

[2] The plaintiff identifies five specific checks in her amended complaint: (1) Check No. 868186, in the amount of $2630.74; (2) Check No. 868595, in the amount of $2630.74; (3) Check No. 868837, in the amount of $2630.74; (4) Check No. 839800, in the amount of $2549.94; and (5) Check No. 838798, in the amount of $7649.82.

[3] Counsel for the plaintiff conceded at oral argument that the hospital has reissued the subject checks to the plaintiff.

sign a release form by December 31, 2023, and indicated that the replacement checks would be issued beginning in April 2024. The plaintiff alleges that the hospital's failure to timely reissue the benefit checks, even though the hospital knew that the checks had remained uncashed, "exposed the plaintiff to further damage . . . ." Amended Complaint, ¶ 29.

The plaintiff claims that the defendants have committed statutory or civil theft pursuant to General Statutes §§ 31-290c and 52-564 because the defendants engaged in or facilitated conduct intended to deprive the plaintiff, as owner, of the specific monies represented by the non-negotiated checks. On May 6, 2024, the defendants filed a motion to strike the plaintiff's amended complaint on the grounds that: (1) the plaintiff's claims of statutory theft are barred by the exclusivity provision of the [act], [§] 31-284 (a); (2) the plaintiff's claims are barred by the absolute litigation privilege because they arise out of statements and communications allegedly made in quasi-judicial proceedings;[4] and (3) the amended complaint fails to state legally cognizable claims of statutory theft. (Docket Entry No. 111.00.) The motion was filed along with a memorandum of law in support. (Docket Entry No. 113.00.)

---

[4] "[T]he litigation privilege provides an absolute immunity from suit and, thus, implicates the trial court's subject matter jurisdiction." *Bruno* v. *Travelers Cos.*, 172 Conn. App. 717, 719, 161 A.3d 630 (2017). Under Connecticut law, "[i]t is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Villages, LLC* v. *Longhi*, 166 Conn. App. 685, 699, 142 A.3d 1162, cert. denied, 323 Conn. 915, 149 A.3d 498 (2016). Importantly, however, when "the allegations of the plaintiffs' complaint . . . are not predicated on statements made during the course of litigation, but are based on the defendants' intentional conduct that did not occur during a judicial proceeding . . . [t]he defendants . . . are not shielded by the litigation privilege." *Fiondella* v. *Meriden*, 186 Conn. App. 552, 562–63, 200 A.3d 196 (2018), cert. denied, 330 Conn. 961, 199 A.3d 20 (2019). Given that the record currently before the court is limited to the allegations of the plaintiff's amended complaint, the court cannot determine that all of the defendants' alleged conduct is covered by the litigation privilege. Accordingly, the court cannot conclude that it lacks subject matter jurisdiction over all of the allegations found in the plaintiff's amended complaint. For that reason, the court will not dismiss the case on the basis of the absolute litigation privilege.

The plaintiff filed an objection on July 5, 2024, arguing that: **(1)** a claim pursuant to § 31-290c is not subject to the exclusivity provision of the [act]; **(2)** a claim pursuant to § 31-290c does not require the pleading of egregiousness; **(3)** a claim pursuant to § 31-290c does not require the exhaustion of administrative remedies; **(4)** the litigation privilege does not apply to claims pursuant to § 31-290c; and **(5)** the plaintiff has adequately pleaded a claim of statutory theft. **(Docket Entry No. 118.00.)** The defendants filed a reply memorandum on August 5, 2024 **(Docket Entry No. 120.00),** and the plaintiff filed a surreply memorandum on August 7, 2024. **(Docket Entry No. 122.00.)**[5] The court heard oral argument on the defendants' motion at an in-person hearing on November 18, 2024.

II

LEGAL ANALYSIS

A

Standard of Review

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). "[A] motion to strike . . . requires no factual findings by the trial court. . . . [The court] construe[s] the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover, [the court notes] that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in

---

[5]The plaintiff did not receive permission to file a surreply memorandum pursuant to Practice Book § 11-10 (c), which provides that "[s]urreply memoranda cannot be filed without permission of the judicial authority." The court, however, may exercise its discretion and consider the surreply nonetheless. See, e.*g.*, *Poce* v. *O & G Industries, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-17-6074254-S (September 30, 2019) (*Noble, J.)* (69 Conn. L. Rptr. 387, 391 n.1). The court will exercise its discretion and consider the plaintiff's surreply in the present case.

determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . [The court] assume[s] the truth of both the specific factual allegations and any facts fairly provable thereunder. . . . A [motion to strike] admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. . . .

"Furthermore, [our appellate courts] long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Citations omitted; internal quotation marks omitted.) *Haworth Country Club, LLC* v. *United Bank*, 226 Conn. App. 665, 677–78, 319 A.3d 146, cert. denied, 350 Conn. 914, 324 A.3d 791 (2024).

## B
### Workers' Compensation Act Exclusivity

[Section] 31-284 (a) sets forth the exclusivity provision of the [act]. Section 31-284 (a) provides in relevant part: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment . . . but an employer shall secure compensation for his employees as provided under this chapter . . . . All

rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees . . . are abolished other than rights and claims given by this chapter . . . .''

Section 31-290c (a) provides: ''Any person or his representative who makes or attempts to make any claim for benefits, receives or attempts to receive benefits, prevents or attempts to prevent the receipt of benefits or reduces or attempts to reduce the amount of benefits under this chapter based in whole or in part upon (1) the intentional misrepresentation of any material fact including, but not limited to, the existence, time, date, place, location, circumstances or symptoms of the claimed injury or illness or (2) the intentional nondisclosure of any material fact affecting such claim or the collection of such benefits, shall be guilty of a class C felony if the amount of benefits claimed or received, including but not limited to, the value of medical services, is less than two thousand dollars, or shall be guilty of a class B felony if the amount of such benefits exceeds two thousand dollars. Such person shall also be liable for treble damages in a civil proceeding under section 52-564.''

Section 52-564 provides: ''Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages.'' ''[S]tatutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119. . . . A person commits larceny within the meaning of . . . § 53a-119 when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. An owner is defined, for purposes of § 53a-119, as any person who has a right to possession superior to that of a taker, obtainer or withholder.'' (Citations omitted; internal quotation marks omitted.) *Rana* v. *Terdjanian*, 136 Conn. App. 99, 113–14, 46 A.3d 175 (2012).

''Violations of § 31-290c, a criminal statute, may be prosecuted by the state's attorney, not by private

individuals. . . . Accordingly, § 31-290c does not afford the plaintiff a private right of action. Rather, § 31-290c confers to the plaintiff the right to bring an action for statutory theft under § 52-564. . . . In *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 346, 695 A.2d 1072 (1997), [our Appellate Court] held that [§] 31-290c is the legislative response to those who have abused or may be abusing the humanitarian purpose of the act by taking advantage of it by fraudulent means. It has ordained accomplishment of this purpose by spelling out the elements of this cause of action and by imposing liability in treble damages in a civil proceeding under § 52-564. . . . [The] court explained: When treble damages are sought pursuant to § 52-564 . . . this court has decided that clear and convincing proof of the actions alleged is required in order to assess treble damages pursuant to § 52-564. . . . In addition, it is required that in actions seeking to recover double or treble damages under statutes that the claim for relief shall be specifically based upon the statutory remedy." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Desmond* v. *Yale-New Haven Hospital, Inc.*, 138 Conn. App. 93, 98–99, 50 A.3d 910, cert. denied, 307 Conn. 942, 58 A.3d 258 (2012).

In the present case, counts one through three of the plaintiff's amended complaint each allege,[6] in relevant part: "34. [The defendants have] prevented or attempted to prevent the receipt of benefits to be received by the plaintiff pursuant to the act, within the meaning of [§ 31-290c], through (1) the intentional misrepresentation of a material fact including whether [the hospital] could or did identify checks that had not been negotiated by the plaintiff; or through (2) the intentional nondisclosure of a material fact affecting the plaintiff's claim or the collection of such benefits, including whether [the

---

[6] Count one is directed toward the hospital, count two is directed toward Letizia, Ambrose & Falls, P.C., and count three is directed toward Attorney Neil Ambrose. The three counts are essentially identical in all other respects.

hospital] could or did identify checks that had not been negotiated by the plaintiff.

"35. [The defendants have] also prevented or attempted to prevent the receipt of benefits to be received by the plaintiff pursuant to the act, within the meaning of [§ 31-290c], through (1) the intentional misrepresentation of a material fact including whether [the hospital] remained in possession of the specific monies represented by non-negotiated checks issued to the plaintiff; or through (2) the intentional nondisclosure of a material fact affecting the plaintiff's claim or the collection of such benefits, including whether [the hospital] remained in possession of the specific monies represented by non-negotiated checks issued to the plaintiff.

"36. [The defendants have] reduced or attempted to reduce the amount of benefits to be received by the plaintiff pursuant to the act, within the meaning of [§ 31-290c], through (1) the intentional misrepresentation of a material fact including whether [the hospital] could or did identify checks that had not been negotiated by the plaintiff; or through (2) the intentional nondisclosure of any material fact affecting the plaintiff's claim or the collection of such benefits, including whether [the hospital] could or did identify checks that had not been negotiated by the plaintiff.

"37. [The defendants have] also reduced or attempted to reduce the amount of benefits to be received by the plaintiff pursuant to the act, within the meaning of [§ 31-290c], through (1) the intentional misrepresentation of a material fact including whether [the hospital] remained in possession of the specific monies represented by non-negotiated checks issued to the plaintiff; or through (2) the intentional nondisclosure of a material fact affecting the plaintiff's claim or the collection of such benefits, including whether [the hospital] remained in possession of the specific monies represented by non-negotiated checks issued to the plaintiff.

"38. [The defendants have] committed statutory or civil theft pursuant to [§ 52-564], which is synonymous

with larceny as defined by **[§ 53a-119]**, because [they engaged in or facilitated conduct] intended to deprive the plaintiff, as owner: of the non-negotiated checks issued to the plaintiff or the specific monies represented by the non-negotiated checks issued to the plaintiff; or of the benefits from the non-negotiated checks issued to the plaintiff or the specific monies represented by the non-negotiated checks issued to the plaintiff; or of the value of the non-negotiated checks issued to the plaintiff or the specific monies represented by the non-negotiated checks issued to the plaintiff, which it continued to do even after the plaintiff made a demand for the reissuance of the non-negotiated checks issued to her or for the delivery of the specific monies represented by the non-negotiated checks issued to her, including but not limited to those non-negotiated checks issued to the plaintiff for which she maintained the originals in her possession and which the [hospital] had already identified as having not been negotiated.

"**39.** [The defendants], by retaining possession of [and by facilitating the hospital's retention of] the non-negotiated checks issued to the plaintiff or the specific monies represented by the non-negotiated checks issued to the plaintiff, has also engaged in conduct that satisfies the definition of statutory or civil theft pursuant to **[§ 52-564]** by intending to appropriate the non-negotiated checks issued to the plaintiff, or the specific monies represented by the non-negotiated checks issued to the plaintiff, to either itself or a third-party, by wrongfully taking, obtaining or withholding such property, the benefits of such property or the value of such property, which it continued to do even after the plaintiff made a demand for the reissuance of the non-negotiated checks issued to her or for the delivery of the specific monies represented by the non-negotiated checks issued to her, including but not limited to those non-negotiated checks issued to the plaintiff for which she maintained the originals in her possession and which the [hospital] had already identified as having not been negotiated." Amended Complaint, Counts 1-3, ¶¶ 34-39.

Similar to the plaintiff's claims in prior litigation, a close review of the allegations set forth in the amended

complaint in the present case makes clear that the alleged wrongdoing on the part of the defendants concerns the administration of the plaintiff's workers' compensation claim and, as our Supreme Court held in *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 870 A.2d 1066 (2005), such claims are barred by the exclusivity provision of the [act]. Specifically, the court stated that "the exclusivity provision applies to an employee's [p]ersonal injury that [a]ris[es] out of and in the course of his employment, both terms that are defined under the act and are prerequisites to compensability. General Statutes § 31-275 (1) and (16). . . . The legislature . . . expressly has conferred jurisdiction upon the commission to adjudicate claims related to untimely payment of benefits and has developed a scheme under which remedies may be provided. As a general matter, the commissioners have jurisdiction to hear all claims . . . arising under [the act] . . . . General Statutes § 31-278. Specifically, the commissioners have the authority to hear an employee's claim that, through the fault or neglect of an employer or insurer, the adjustment or payment of compensation due . . . [has been] unduly delayed and to assess a civil penalty of up to $500 for each case of delay. General Statutes § 31-288 (b). If an employer or insurer unreasonably contests liability, the commissioners have authority to award attorney's fees to the employee. General Statutes § 31-300. Similarly, if a commissioner determines that, through the fault or neglect of the employer or insurer, payments or adjustments in payment have been delayed unduly or unreasonably, the commissioner may include interest and attorney's fees in an award. General Statutes § 31-300. Finally, if an employer fails to make payments due under an award or voluntary agreement within the statutorily prescribed period, a commissioner shall assess a penalty for each late payment, in the amount of [20 percent] of such payment, in addition to any other interest or penalty imposed pursuant to the provisions of this chapter. General Statutes § 31-303. . . .

"The legislature has empowered the commission to take other measures to ensure prompt payment of benefits

and to address the wrongful withholding of benefits. Specifically, the legislature mandated that the commission promulgate regulations to assure prompt payment of benefits. General Statutes § 31-295 (c). The attorney general, upon notice from the commission, also is authorized to initiate civil actions to enforce untimely payments. See General Statutes §§ 31-288 (e), 31-289a (a) and 31-289b." (Footnote omitted; internal quotation marks omitted.) *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 496–97.

Moreover, the court explained that, "in determining whether a cause of action is barred by the exclusivity provision, the appropriate question is whether the act is applicable to the injury at issue. . . . [T]he ultimate question is one of legislative intent. . . . [I]n order to give a reasonable sphere of operation to the scheme the legislature has prescribed for the commission's adjudication of claims of delayed or improperly denied payment, we must read the exclusionary provision so as not to countermand or diminish the force of the provisions setting forth the specific remedies provided to address such conduct. . . . In other words, by providing remedies for such conduct, the legislature evinced its intention to bar a tort action for the same conduct proscribed and penalized under the act. . . . To conclude otherwise would create too great a risk of upsetting the careful balance set by the legislature between providing an efficient, affordable system for prompt resolution of claims, providing compensation for unduly delayed claims and punishing wrongful conduct. Indeed, construing the act to permit a tort action for an injury for which a remedial process is provided under the act would invite the indefinite prolonging of litigation and risk double recoveries and inconsistent findings of fact, a result which the legislature, in enacting a system of compensation in place of common law remedies, certainly wished to avoid." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 498–500. Ultimately, the court concluded that "we must construe the exclusionary provision's prohibition on damages actions for injuries 'arising out of and in the

course of . . . employment' to include injuries arising out of and in the course of the *workers' compensation claims process*." (Emphasis in original.) Id., 504.

Pursuant to *DeOliveira*, the plaintiff's claims in the present case alleging a bad faith delay in processing her workers' compensation claims fall squarely within the exclusive jurisdiction of the commission. Applying the principles outlined in *DeOliveira* to the allegations in the present case, it is evident that the plaintiff's claimed injuries, allegedly caused by the defendants' bad faith delays in processing her workers' compensation claim, arose out of and in the course of the workers' compensation claims process. Accordingly, the plaintiff's alleged injuries fall within the exclusive jurisdiction of the commission and, therefore, the defendants' motion to strike is granted.

## C

### Egregiousness

In *DeOliveira*, the court "recognize[d] that there could be an instance in which an insurer's conduct related to the processing of a claim, separate and apart from nonpayment, might be *so egregious* that the insurer no longer could be deemed to be acting as an agent of the employer and, thus, a claim arising from such conduct would not fall within the scope of the act. Some other jurisdictions have recognized such a limitation. See, e.g., *Unruh* v. *Truck Ins. Exchange*, 7 Cal. 3d 616, 620–21, 498 P.2d 1063, 102 Cal. Rptr. 815 (1972) (insurer's agent misrepresented identity to claimant, caused her to become emotionally involved with him and induced her to engage in unusual activities beyond her normal physical capabilities while another person filmed her, resulting in aggravation of her physical injury and physical and mental breakdown requiring hospitalization upon claimant discovering deceit); *Young* v. *Hartford Accident & Indemnity Co.*, 303 Md. 182, 193, 492 A.2d 1270 (1985) (plaintiff who suffered emotional trauma after being assaulted at work alleged that carrier, in attempt to reduce its monetary exposure, insisted on psychiatric

examination with deliberate intent that plaintiff either commit suicide or drop her claim, and plaintiff thereafter attempted suicide**).**" (Emphasis in original.**)** *DeOliveira* v. *Liberty Mutual Ins. Co.*, supra, 273 Conn. 507.

In the present case, even if the court were to read the plaintiff's allegations in their most damaging light to the defendants, the defendants' conduct did not arise to the level of egregious behavior that the court in *DeOliveira* recognized could provide an exception to the exclusivity provision. Rather, the plaintiff's allegations of bad faith processing are the kind of assertions routinely made in workers' compensation cases, and the plaintiff contributed to the delay by failing to timely deposit or cash the subject checks when they were first delivered to her. Indeed, the plaintiff in *DeOliveira* claimed that he suffered depression due in part to the nonpayment of benefits and that, as a result of this depression, he was totally disabled. Id., 491–92. In the present case, the plaintiff alleges that the delay in reissuing her workers' compensation checks has caused further injury. This is not the type of egregious conduct that would warrant an exception from the exclusivity provision. Accordingly, the plaintiff's claims fall properly within the jurisdiction of the commission.[7]

### III
### CONCLUSION

For the foregoing reasons, the defendants' motion to strike is granted.

----

[7]As the court concludes that the plaintiff's claims are barred by the exclusivity provision of the [act], the court need not address the defendants' argument that the amended complaint fails to state legally cognizable claims of statutory theft.